## PINDER v. BOARD OF SUPERVISORS OF ELECTION OF CALCASIEU PARISH.

### No. 1112.

Court of Appeal of Louisiana. First Circuit.

March 7, 1933.

T. Arthur Edwards, of Lake Charles, for appellant.

John J. Robira, Dist. Atty., of Lake Charles, for appellee.

MOUTON, Judge.

Plaintiff, a police juror of Calcasieu parish, applied to the district court to restrain defendants from holding an election to recall him from his office, which was denied. A suspensive appeal was taken to this court from the judgment rendered below, and, in the meantime, an application was made to this court asking for the issuance of a writ, in aid of our appellate jurisdiction, to enjoin the holding of the recall election.

The issuance of the writ was refused by this court and an application for a rehearing was filed by relator.

We shall now proceed to render judgment on the suspensive appeal taken herein which will automatically dispose of the application for a rehearing.

The trial judge rendered the following opinion and judgment rejecting the plaintiff's demand:

"The Governor of Louisiana, having ordered an election, in Ward Five of the Parish of Calcasieu, to determine whether or not police juror R. L. Pinder shall be recalled, Pinder seeks in this proceeding to have the recall election law, Act 121 of 1921, declared unconstitutional, and asks that an injunction issue to prevent the holding of the election.

"As grounds for declaring unconstitutional the law mentioned, the plaintiff urges:

"1. The act is broader than its title, in that the title to the act provides for exemption from the act certain officers, whereas the act itself makes no such exception.

"2. The title of the act contains more than one object.

"3. The act provides for the recall of officers, without reason, at the whim of a small and Bolshevick minority of the voters.

"4. The act makes no provision for defraying election expenses, except by reference to another law.

"5. The act declares 'The only required qualification for chairman or vice chairman (of the recall committee) is that each shall be a duly registered and qualified voter in the state,' instead of requiring such person to be a resident of the subdivision in which the election is to be held.

"6. The act authorizes a certificate by the registrar of voters, when a recall petition is signed by only 25% of the voters.

"7. The act requires the Secretary of State to certify that the number of signers on a recall petition is that provided by the law when the Secretary of State has no means of knowing whether that number is correct or not.

"8. The act requires the Governor to issue a call for an election when the recall petition contains the prescribed certificates of the registrar of voters and the Secretary of State, when the Governor has no means of knowing whether the certificates are correct or not.

"9. The act requires certificates from the officers mentioned in the preceding paragraph, based on the number of persons voting in prior elections, when the number of persons qualified to vote may change subsequent to the preceding election.

"10. The act provides for fewer election commissioners than are provided under the general election law; that no election clerks are provided for, and there is no provision requiring commissioners to be sworn.

"11. The act is not uniform in its operation, because it exempts judges from its operation.

"12. That all of the provisions of the act are conflicting, and the whole act is so uncertain and ambiguous as not to be susceptible of construction.

"13. That the act is contrary to public policy.

"14. That the act seeks to deprive a police juror of a vested right in an office.

"15. That the act is in conflict with provisions in the Constitution, which provide a different method of removing persons from office.

"The recall petition was attacked, because, it is alleged, a certificate dated July 26, 1932, signed by the registrar of voters, was removed by the registrar, and another certificate, dated August 11, 1932, was placed thereon by the registrar of voters.

"The petition was further attacked because it did not provide for announcing the result of the election.

"The proclamation of the Governor was attacked because the petition was not presented within ten days from the date of the original certificate of the registrar of voters.

"Other grounds of attack on the petition were urged, but it is not necessary to consider them, because no evidence was offered to support them.

"The title of Act No. 121 of 1921 (Ex. Sess.) reads as follows:

" 'An Act Providing for the recall of any state, district, parish, municipal or ward officer, (except judges of the courts of record); providing for the calling and holding of recall elections; defining violations of this act and providing penalties for the violation of the provisions of this act, and repealing all laws in conflict therewith.'

"Section 12 of the act mentioned, which plaintiff claims is broader than its title, because the exemption of officers from the terms of the act is broader than the exemption in the title, reads as follows:

" 'Section 12. That this act is enacted pursuant to and under authority of Section 9 of Article IX, of the Constitution of the State of Louisiana, and, whereas the said article provides that the Legislature of the State of Louisiana may pass laws for the recall of any state, district, parish, municipal or ward officer, except judges of courts of record, and except wherein otherwise provided by the said Constitution of Louisiana, *this act shall not apply wherein it is otherwise provided by the said Constitution of Louisiana, nor to the judges of the courts of record.*' (Italics by present writer.)

"Since the title of an act which exempts from the operation of the act all officers except one, is broader than the terms of the act itself, which, conceding for the sake of arguments, exempts from the provisions of the act more than one officer, the plaintiff has no just ground to complain. That the title of an act is broader than the act itself is no ground for declaring the act unconstitutional. State v. Kilshaw, 158 La. 203, 103 So. 740.

"Since a statute passed pursuant to specific constitutional authority allows the voters to remove their officers without the assignment of reason, it is plain the courts can not require one. The law makers saw no necessity to require a voter to give a reason when he elected an officer, and they saw no such necessity when they provided a method of getting rid of an unsatisfactory officer.

"Counsel is in error when he urges that a minority may remove an officer in a recall election. Section 9 of the act in question declares that 'the majority of the votes cast shall determine the result' of the election.

"Section 8 of Act No. 121 of 1921 (Ex. Sess.) provides that the 'tickets at such recall election shall be provided and supplied in the same manner as the tickets for general elections, and shall be in accordance with the general election laws.'

"No constitutional objection is seen as to this part of the act under discussion, and even if such objection were sound, plaintiff could not successfully urge it, unless he showed that he was in some way adversely affected by it. This he has not done. Vander Sluys v. Finfrock, 158 La. 175, 103 So. 730.

"There is no constitutional provision requiring that the chairman of petitioners for a recall election in a ward shall be an elector of that ward. The Legislature saw fit to require that such chairman be a qualified elector in the state, but the Legislature might

have omitted even that qualification, if it had so desired.

"Section 9 of article 9 of the Constitution 1921 granting power to the Legislature to provide for recall elections, does not provide how such elections shall be initiated, and the Legislature is thus left free to declare such election shall be called upon petition, and to fix the required number of petitioners. Since this is true, the Legislature is fully vested with authority to fix the number at 25% of the votes of the preceding election, or at any other number its wisdom dictates.

"Plaintiff urges that section 4 of Act No. 121 of 1921 (Ex. Sess.) is unconstitutional because the Secretary of State is required to certify whether or not the 'number of signatures required under the act' is attached to the recall petition, when as contended by the plaintiff, the Secretary of State has no means of knowing whether the signatures on the petition are genuine, or of persons eligible to sign. No valid constitutional objection is seen to such requirement, even if the Secretary of State did not then actually have actual knowledge of the subject matter mentioned, but in fact, the law does not require that this official have any such knowledge, or act on the assumption that he does have it. What the law does require is that the Secretary of State count the names, whether genuine or eligible, on the petition, and then certify from official records, which the law requires be in his office, whether that number is 25% of the number of votes cast in the last election held in the subdivision affected by the recall. This act no more requires the Secretary of State to pass upon the validity of the names signed to a recall petition than it requires him to pass upon the validity of the votes cast in the preceding election.

"The plaintiff next attacks, as unconstitutional, section 5 of the act, which requires the Governor to order a recall election, when the petition bearing the certificates of the Registrar of Voters and the Secretary of State, showing that the petition contains names amounting to 25% of the number of votes case in the preceding election, is presented. The ground of the attack is that the Governor can have no actual knowledge of whether or not the names on the petition are genuine, or are of persons eligible to sign. These are questions the Governor is not authorized or required to pass upon. He is required to act upon the certificates mentioned.

"The fact that the number of persons qualified to vote in an election may change from year to year or day to day, is no reason why the Legislature may not fix the number of petitioners required on a recall petition, as 25% of the number of votes cast in the preceding election. In the absence of a constitutional inhibition, and there is none, the Legislature may use any basis for fixing the number of required recall petitioners it cares to use.

"The contention that the act is unconstitutional because it provides fewer recall election officials than are required by the general election laws, and that the required officials are not required to be sworn, can hardly be serious.

"That a law does not act uniformly upon all classes, is no valid constitutional objection, hence the fact that the recall law does not apply to judges of courts or record would be of no moment, even if section 9 of article 9 of the Constitution 1921 did not (as it in express terms does) prohibit the Legislature from applying the recall to judges of courts of record, while permitting its application to all other officials. In other words, the people in whom there is vested every power not in conflict with the Federal Constitution, through their Constitution, have divided their officers into two classes, and have declared that one class may be recalled at an election, and have declared that the other class may not be so recalled.

"Counsel attacks the act as being so uncertain, ambiguous, and its provisions so conflicting as to be meaningless. A careful reading of the act discloses no such defects.

"An act can hardly be null as being contrary to public policy, when the people, through their constitutional delegates, have expressly granted the lawmakers the power to pass the act, and then through their legislative representatives, have actually adopted the law.

"It is well settled that there is no vested right to hold an office, or even to seek such an office. When one qualified does seek and obtain an office, he holds it subject to the Constitution and laws which permitted him to obtain it, and which provide the manner by which he may lose it.

"The plaintiff attacks the recall petition in question because it fails to provide a method of promulgating the result of a recall election. Section 9 of the act makes ample provision for the promulgation of the results of such election.

"Finally, the plaintiff urges that the act in question and the constitutional provision under which it was enacted, are in hopeless conflict with the constitution.

"A reading of section 9, article 9 of the Constitution 1921, which provides:

" 'The Legislature may pass laws for the recall of any state, district, parish, municipal or ward officer, except judges of the courts of record, and except wherein otherwise provided by this Constitution; provided the sole issue tendered at any recall election shall be whether such officer shall be recalled'

—plainly shows that the Legislature was prohibited from passing a recall law apply-

ing to judges, or to any one else whom the constitution in some other place said the recall law should not apply to.

"From an examination of section 12 of Act No. 121 of 1921 (Ex. Sess.), particularly that part which is underscored, all of which has been quoted above, it will be seen that the Legislature declared the act was not to apply to judges of courts of record, not in cases where it was declared in the Constitution, in addition to the declaration in section 9, article 9, that the recall could not be applied. There is no prohibition affecting the recall, in the Constitution, other than that in section 9, article 9, which says the recall shall not apply to judges of courts of record.

"Counsel seems to be under the impression that the act in question, and section 9 of article 9 of the Constitution declare that the recall shall not apply in cases where the Constitution provides another method for removal from office. The plain language of section 9, article 9 of the Constitution, and of section 12 of Act No. 121 of 1921 (Ex. Sess.), negatives this construction.

"Plaintiff's contended construction would render absolutely meaningless section 9 of article 9 of the Constitution, for other parts of the Constitution provide at least two methods for removing every officer in the State. Certainly the framers of the Constitution meant something when they wrote section 9, article 9, and any construction other than that placed upon it by the Court would read that section out of the Constitution.

"No importance can be attached to the fact that the Registrar of Voters first attached a certificate to the recall petition dated July 26, 1932, and upon deciding it was not in proper form, attached another certificate, dated August 11, 1932, after which the petition and certificate were delivered to the Governor. All that the law (section 2) requires on this point is that the certificate 'shall be executed, date and signed, within ten days prior to its presentation' to the Governor. There is neither allegation nor proof that the petition and certificate were not so delivered.

"That the certificate and petition were timely delivered to the Governor appears from his proclamation calling the election, for it is therein stated that they were 'presented in accordance with law.'

"The plaintiff alleged in his petition that 'many of the persons whose names appear as signers on said recall petition did not sign the same in person, but their names were illegally signed by others, and therefore said petition is further null and void.'

"As the plaintiff failed to state how many or which names were thus illegally on the petition, or whether such names would reduce the number below the figure required by law, and as there was no prayer for the removal of any names, no evidence was received on this point."

All the attacks of plaintiff on the constitutionality of Act No. 121 of 1921 (Ex. Sess.), and on the alleged failure of the election authorities to comply with the requisites of that statute, were passed upon by the district judge and adversely to the contentions of relator. We find no error in the opinion of the court below on the various propositions of law submitted for its decision.

■ Under article 7, § 10, Constitution 1921, the Supreme Court has appellate jurisdiction in all cases when "a law of this State has been declared unconstitutional." If declared constitutional below, it must be implied that this court must exercise jurisdiction. The lower court having upheld the constitutionality of the act in question, we shall therefore pass on this feature of the case from which, however, no harm can follow, as the higher court has the right of reviewing the judgments rendered by this court.

The title of Act No. 121 of 1921 (Ex. Sess.), page 295, against which plaintiff levels his attacks of unconstitutionality, reads, as follows: "Providing for the recall of any state, district, parish, municipal or ward officer, (except judges of the courts of record)"; etc.

In section 12, body of the act, wherein, after saying that the act is enacted pursuant to section 9 of article 9, Constitution 1921, and, after declaring that the judges of the courts of record are excepted from a recall, the act further says in connection therewith, "and except wherein otherwise provided by the said Constitution, * * * this act shall not apply wherein it is otherwise provided by the said Constitution * * * nor to the judges of the courts of record."

■■ On this question counsel for plaintiff quotes section 16, article 3 of the Constitution 1921, which says, every law "shall embrace but one object, and shall have a title indicative of such object." He refers to authorities which hold that, "the object of law is the aim or purpose of its enactment," and that a statute is void which contains two objects. These rules of interpretation are universally accepted as being correct. The object of the statute under consideration was to provide for the recall of state, district, parish, municipal, or ward officers. In the title, judges of courts of record were excepted, also in the body of the act, where was added an exception wherein it was otherwise provided in the Constitution. This exception, thus noted in section 12 of the act, was not an object, the aim or purpose of the enactment. This exception so made in the provisions of the act did not introduce a new object therein, making two objects, which could have resulted in the manifest impossibility of choosing between the two, and "holding the

Act as valid as to one and void as to the other," as was held in the citations referred to by counsel.

The exception thus made in section 12 of the act complies with section 9 of article 9 of the Constitution 1921, which authorizes the Legislature to pass laws for the recall of officers, wherein, after saying judges of courts of record shall be excepted, says; "And except wherein otherwise provided by this Constitution." The act is not amenable to the constitutional objection of being broader than its title or because it contained two objects.

Counsel, in one of his various attacks on the constitutionality of the act, refers with much assurance to the case of State v. Gravolet, 168 La. 648, 123 So. 111, where the court expressed itself, as follows: "Where Constitution provides method of debarring or removing an officer from his office, such method is exclusive."

If we correctly understand counsel's position, his contention is that no officer can be removed from his office through a recall election, as this would be in violation of the exclusive method referred to in that decision. In that case the Legislature undertook to declare that one who bribed a voter would be ineligible to office for four years thereafter and to impose upon him certain penalties. The Supreme Court held that the Constitution provided for the exclusion forever of such an offender from the right to hold any office and from the right of suffrage.

 It was therefore held that the Constitution provided for the removal of such an offender from office, and that its method of doing so was exclusive. If the Legislature had, without constitutional authority, undertaken to recall officers, their removal by that method would have been objectionable and in violation of the exclusive method pointed out in the Constitution. Here, however, the power to recall was vested in the Legislature by the Constitution itself as another method of removal which the lawmaking authority undertook to carry out by Act No. 121 of 1921 (Ex. Sess.), and the rule of exclusiveness mentioned in the decision, above cited, does not apply.

There can be no doubt that the right of removal of certain designated officers by means of the recall elections could be lodged in the Constitution, and that the method of carrying out that constitutional provision could be delegated to the Legislature. It does not seem from the many objections leveled against the act under review that counsel finds any fault to the exception which exempts judges from recall. In that respect we agree with counsel, and will add, that in the opinion of the writer, the insertion of that provision in the statute was a very wise measure.

Another complaint is, that the certificate of the registrar of voters was not presented within ten days from the time of its execution, to Governor Allen who issued the proclamation for the election. The original certificate was submitted for examination to Ex-Governor King, attorney at law. He could not remember the date it was submitted to him but said he thought it was about July 26, 1932. Governor King prepared a new certificate and gave instructions not to use the old one.

Ex-Governor King could not state with certainty that the original certificate was submitted to him on July 26, 1932. His testimony is indefinite in that respect.

Counsel for plaintiff will make no allowance for the possibility that this certificate might have been presented to Governor King at a later date.

Section 2 of the act provides for the presentation of the certificate to the Governor, as appears in section 3 of the act, within ten days from its execution, and the Governor must issue his proclamation within five days after it is presented to him.

The proclamation was issued August 13, 1932. If we compute the time starting from July 26, 1932, up to August 13, 1932, when the proclamation was issued, seventeen days, at most eighteen, elapsed between these two dates. As the presentation must be made to the Governor in ten days from the execution of the certificate and he is given five days to call the election after the certificate is presented to him, based on this calculation, the time for the proclamation would have expired August 10, 1932, two days before it was issued. The proof shows, however, that this original certificate was not approved by Governor King, the attorney to whom it was submitted. He prepared another, obviously, the one upon which the Governor acted.

 Counsel's contention is, that the date for the presentation is inexorably fixed from the time a certificate is presented. Evidently, the law means a legal certificate or one properly executed, not an illegal one which would be no certificate. In this case it is quite certain that the original certificate was defective and that a valid one was prepared by Governor King, which must have been at a later date. The ten days to be computed in this instant case must start from the second certificate and not from the original which evidently did not comply with the requisites of the act.

In his proclamation Governor Allen says that the petition and certificate were presented to him by the secretary of state in accordance with law, and that he ordered the election.

 With the uncertainty existing as to the exact date when the original certificate was executed, and that in all probabilities the legal certificate was executed later, taken in connection with the statement in the procla-

mation that it was presented to the Governor in accordance with law which implies that it had been presented to him within ten days from its execution, we hold that the showing made by plaintiff does not warrant the setting aside of the order calling the election, on that ground, nor on the constitutional or other grounds urged in his complaint.

The judgment is therefore affirmed.