JOSEPH R. MILLER *v.* THE NEW OLEANS CANAL AND BANKING COMPANY.

A judge has no right to state to the jury his own conclusions drawn from the law and evidence in the case. Such expressions of opinion are calculated to have an undue weight with the jury.

To ascertain whether one employed by a corporation to superintend and direct the construction of a canal, had authority to enter into a particular contract relative to labor to be done in its construction, on behalf of his employers, all the facts and circumstances of the case should be taken into consideration. The authority to make such a contract need not be express and special ; it may be inferred from circumstances, and the objects of the parties.

No particular form is required for a mandate. For certain purposes it must be express and special ; (C. C. 2966 ;) for others, it may be verbal and general. Ibid. 2961. It may vest an indefinite power, to do whatever may conduce to the interest of the principal, Ib. 2964. And when powers are granted to a person

exercising a profession, or performing certain functions, the authority is to be inferred from the functions which the mandatary exercises. Ibid. 2969.

The contract of mandate may be tacit as well as express; and the acts of the principal must be fairly and liberally construed towards those who contract with the agent, as well as towards the agent.

Where the law requires a contract to be in writing, the power to execute it must be in writing also; but where this is not required, the power may be in the simplest form, and the intention of the parties may be gathered, as much from their acts, as from their agreements.

A mandate given in writing, in express terms, cannot be enlarged by parol evidence; but, as a general rule, where authority is given by informal instruments and confers general powers, they should be construed with more liberality than more formal and deliberate instruments. The authority should also be construed, as to its nature and extent, according to the terms used and the objects to be accomplished.

In an action on a contract alleged to have been executed by an agent of the defendants, the latter cannot object to the contract's being read in evidence on the ground that the authority of the agent had not been proved; but if no authority be aftewards shown, or none can be properly inferred from the evidence, the contract will be of no avail.

The return of a sheriff showing the manner in which interrogatories propounded to a witness were served on the opposite party, may be amended on the trial of the case. *Per Curiam.* A sheriff should be permitted to amend his return so as to make it conform to the fact, whenever it is called in question. It is not too late on the trial of the case.

An agent by whom a contract has been executed, and who has been released by the plaintiff from any liability to him, may be examined as a witness in an action on the contract, to prove the extent of his powers.

APPEAL from the Parish Court of New Orleans, *Maurian, J. Perin,* for the appellant.

*F. B. Conrad,* for the defendants.

GARLAND, J. The plaintiff alleges, that he entered into a contract with one Simon Cameron, a duly authorized agent of the bank, by which he bound and obligated himself to extract and clear all the trees and stumps that were visible, of a foot or more in diameter, on the line of the New Orleans canal, and to remove them beyond the limits of the road on each side; in consideration of which, the bank agreed to pay three dollars for each tree or stump extracted. The petitioner further states, that for the purpose of carrying said contract into effect, he expended a large sum of money in preparing his machines and implements for pulling up said trees and stumps, and incurred heavy expenses in

employing laborers and assistants, and actually commenced the execution of his contract, when the defendants, without cause, violated their agreement, and prohibited him from proceeding with his work, without giving him notice, and actually made one or more contracts with other persons, to do all the work on the said canal, whereby he suffered damage to the amount of ten thousand dollars. It is further alleged, that the petitioner sustained damages to the amount of $300, in consequence of the agents and workmen in the service of the bank having, after the contract was made with him, cut down a number of trees on the line of the canal, whereby he was much impeded and hindered in his work and operations; and a further sum of six hundred and fifteen dollars and six cents is claimed, for trees and stumps actually pulled up and removed, and for work and labor done and executed for the defendants, making altogether a sum of $10,915 06. The answer is a general denial of all the allegations.

The contract alleged to have been violated is annexed to the petition, and stipulates, that the plaintiff is to extract and clear away all the trees and stumps that are visible, of one foot or more in diameter, on the line of the canal from Lake Pontchartrain to the city of New Orleans, to the satisfaction of the principal engineer of the company, "for which Simon Cameron, on the part of the New Orleans Canal and Banking Company, as their agent, agrees to pay the said Miller, for each tree or stump so removed, the sum of three dollars." The other parts of the contract it is not necessary now to notice.

The case was tried by a jury, who, under a charge from the judge, that Cameron had no authority to enter into this contract and bind the bank, found a verdict for the defendants, refusing to pay the plaintiff any thing for the trees he actually pulled up and removed. From the judgment given on this verdict, the plaintiff has appealed.

As the case is now before us, it is only necessary to notice the bills of exceptions taken to the charge of the judge, and those relating to the admission or rejection of evidence offered on the trial.

The judge told the jury, in the first place, that the defendants

relied upon the want of authority, or power, in Cameron to bind them by such a contract. His capacity as superintendent of the works, he said, was acknowledged on all hands, but his appointment as such by the bank did not constitute him "such an agent as by law is authorized to bind the bank in such a contract as the one sued upon." He further told the jurors, that, "in order to enter into a contract like the one sued upon, and to make it binding upon the bank, it was requisite that Cameron should have had from the bank an express and special power to do so ; or, in default of such express and special power, that a ratification must be shown, clear, evident, and leaving no doubt as to its object and extent ;" and further, that " the ratification must have all the requisites which would have been necessary to grant the power originally." These positions of the judge below were enforced by further remarks to the jury, and to them the plaintiff objects.

To test the accuracy of this charge, it is necessary that the facts in relation to Cameron's appointment, duties and powers should be stated, and some other matters connected with the construction of the canal. In the spring of the year 1831, the board of directors resolved, "that a committee of three members be appointed to obtain and report to the board all necessary information as to the contemplated canal, particularly as to the quantity and value of the land that may be necessary to be purchased, and generally to obtain such information on this subject as may be useful." This committee was afterwards called the "Canal Committee," and various subjects were referred to it, but no general powers were given other than those mentioned. It continued in existence for a number of years, and perhaps yet exists. In the autumn of the year aforesaid, the bank entered into a contract with Messrs. McCord & Cameron to excavate and complete the canal and other works for a stipulated sum. They commenced the work in conformity with their contract, and the plans of the engineer of the company, but in a short time it was found they could not comply with their agreement, and, in the early part of December, 1831, it was by consent annulled, and, on the 10th of that month, the canal committee was "authorized to employ Simon Cameron in the capacity of superintendent, and to allow him such compensation as shall appear reasonable."

No specification of powers was made; and under this authority Cameron proceeded to have the work on the canal executed, according to the plans submitted by the engineer, at the expense of the bank. Every week, as appears from the books of the bank, funds were placed, subject to his order, by the board of directors, sometimes on the recommendation of the canal committee, and sometimes without it. He disbursed them and rendered his accounts to the committee, by whom they were reported to the bank. He superintended and directed the whole work, except as to plans, surveys, &c. He made various contracts with individuals and companies, in relation to excavating the canal, purchasing materials and other things. A number of these contracts are in the record, and in all of them he states himself to be the agent and superintendent of the company. The defendants, or their committee, knew that these contracts were made; they discharged them, and required them to be filed as vouchers, in support of his accounts. The contract with the plaintiff was made on the 10th January, 1832. It is not positively proved that the superintendent ever reported it specially to the committee, or to the board of directors; nor does it appear that he ever made a report of any other contract, until it was to be used in settling his accounts. No payment ever having been made on account of this, it does not appear that it was immediately filed. Blank printed forms were make by the agents of the bank, and given to Cameron to facilitate him in making his contracts; but the one in question was not of that kind, as it contains stipulations not in the others, and relates to a different matter. Cameron, in his deposition, says, that he had full authority to make the contract with the plaintiff, and that the bank directors and committee knew all about it; and this statement is supported by the fact, of the operations of the plaintiff being notorious in the city, and considered so extraordinary as to excite much curiosity, he having a machine in operation that enabled him to pull up large trees by the roots and remove them out of the way. The engineer of the company and the assistants knew that the plaintiff was at work, and the practicability of his schemes was often discussed. In the month of February, 1832, some weeks after the plaintiff had commenced his work, the defendants, without giving him notice, or com-

plaining of his operations, made a contract with a company of individuals, to make the canal, and discharged him; and they now defend themselves on the ground of a want of authority in Cameron to make the contract.

With the foregoing facts before him, the judge charged the jury as before stated. In telling the jury his own conclusions, as drawn from the law and evidence of the case, as the judge seems to have done, we think he erred. Such an expression of opinion was calculated to have an undue weight with the jury, and ought not to have been thrown into the scale to operate against the plaintiff. That the mere appointment of Cameron as a superintendent, did not constitute him such an agent as by law authorized him to enter into this contract, is probably true; but that, we think, is a restricted view of the case. All the objects and circumstances should be taken into consideration. Here was a corporation engaged in an expensive work, for its own profit and the public benefit. The managers of it were probaby engaged in active mercantile operations, and not much acquainted with what was necessary to effect their purposes, beyond the supply of the means; and it was indispensable to have some person engaged to superintend the work and apply the funds appropriated, who possessed information, experience, fidelity and energy. These qualities, it is probable, the bank directors supposed were combined in Cameron, and they therefore agreed to pay him a salary of ten thousand dollars per annum, which induces the belief that he was to be considered as something more than a mere superintendent or overseer, appointed to see that the work ordered was executed. It is more than probable that the parties intended, that he who was to execute the work, was to provide or employ the means to complete it, and that ample powers were conferred on the agent. We think the judge should have told the jury to look to all the facts and circumstances of the case, and then say whether or not Cameron had authority to do all that was necessary to effect what he was specially charged to execute. He should have said, that there is no particular form of mandate; that for certain purposes it must be express and special. Civil Code, art. 2966. That for other purposes, it may be verbal and general. Ib. art. 2961. It may vest

an indefinite power, to do whatever may be conducive to the in-
terest of the principal. Art. 2964. And when powers are granted
to persons exercising a profession, or performing certain func-
tions, the authority is to be inferred from the functions which the
mandatary exercises. Art. 2969. The contract of mandate may
be tacit as well as express; and the acts of the principal are to
be fairly and liberally construed towards those who contract with
the agent, (7 Mart. N. S. 143; 11 La. 288,) and also towards the
agent. Whenever the law requires a contract to be in writing,
the power to execute it must be in writing also; but when this
is not absolutely necessary, the power may be given in the sim-
plest form, and the intention of the parties be gathered as much
from their acts as from their agreements. When the power is
given in writing in express terms, it cannot be enlarged by parol
evidence. Story on Agency, p. 75, § 79. But it is a general
rule, where authority is given by informal instruments and con-
fers general powers, that they are to be construed with more
liberality than more formal and deliberate instruments. Ibid.
p. 77, § 82. The authority must also be construed as to its
nature and extent, according to the force of the terms used, and
the objects to be accomplished. Ib. § 83. In this case, the
contract might have been by parol and still obligatory, and we
do not think the authority to make it must have been express and
special, but that it may be inferred from the circumstances and
objects the parties had in contemplation.

We proceed now to notice several bills of exceptions in the
record. The first is to the opinion of the judge admitting the
contract sued on to be read as evidence, before the authority of
Cameron to make it was proved. The objection was, we think,
properly overruled. The plaintiff had a right to have his con-
tract with the alleged agent of the defendants, laid before the
jury; but if an authority to make it was not afterwards shown,
or properly inferred from the testimony, it would be of no avail.
It was a link in the chain of evidence properly received, but of
no force in itself, until connected with something else.

The next bill is to the opinion of the court, permitting the
sheriff to amend his return as to the service of the interrogato-
ries on the defendants. The plaintiff wished to take the depo-

sition of Cameron, and had his interrogatories served on the defendants in the manner directed by law ; but the sheriff made a mistake in describing the person on whom they were served. The defendants' counsel objected to the deposition being read on this ground, when the counsel for the plaintiff moved, that the sheriff have leave to amend his return, to which objection was made, that it was too late, more than four months having elapsed, and the cause being then on trial. We think the judge did not err in permitting this amendment. It is a well settled principle, that a sheriff should be permitted to amend his return so as to make it conform to the fact, whenever it is called in question ; and it is not too late on the trial of the case.

During the trial, the plaintiff offered in evidence the deposition of Simon Cameron, to prove what powers were confided to him by the defendants, and that he had made other contracts which the directors of the bank were informed of, and had approved and discharged. To this, the counsel of the defendants objected, on the ground that Cameron could not be a witness to prove the extent of his agency, although released by the plaintiff from any liability to him. The court sustained the objection and rejected the deposition, to which the plaintiff excepted. We think the court erred. Many cases have been decided by this court, recognizing the competency of agents to testify in cases in which their principals were parties, and the acts of the agent involved. 13 La. 216. 9 La. 52, &c. The deposition ought to have been admitted, and the weight it was entitled to, left to the jury. 2 Starkie, 767 to 769.

In consequence of the erroneous charge of the judge to the jury, and of their finding a verdict in obedience to it, we must reverse the judgment and remand the cause for a new trial, it not being in our power to pass upon the case as now presented to us.

It is ordered and decreed, that the judgment of the Parish Court be annulled and reversed, and the cause remanded for a new trial, with instructions to the judge to admit the deposition of Cameron in evidence, unless some other objection exists to its admissibility than is stated in the bills of exceptions decided on ; and in his charge to the jury to conform to the principles of law herein stated, and in other respects to proceed according to law ; the defendants paying the costs of the appeal.