McCALEB, Justice.
 

 Exercising the supervisory powers vested in us by Article 7, Section 2 of the Constitution of 1921, we issued a writ of certiorari herein directing the District Judge to transmit to this court the record of the proceedings complained of by the relators and further ordered that the judge and the respondents, Board of Supervisors of Elections of the Parish of Lafayette, James M. Gardiner, Registrar of Voters of the Parish -of Lafayette, and Gaston Hebert, Sheriff of the Parish of Lafayette, show cause why the relief prayed for by the relators in their petition for writs should not be granted.
 

 The transcript of the proceedings had in the District Court reveals the following facts: The relators, J. Máxime Roy and Wilson J. Peck, are duly elected officers of the City of Lafayette, occupying the positions of Trustee of Public Safety (Ex-Officio Mayor) and Trustee of Public Property respectively. Prior to May 31, 1941, a group of electors of the City of Lafayette circulated petitions directed to the Governor in which they requested that an election be called and held in the City of Lafayette for the purpose of recalling the relators, Roy and Peck. On May 31, 1941, James M. Gardiner, the Registrar of Voters, with whom the recall petitions had been filed, issued certificates showing the number of persons who had signed the petitions and also the total number of qualified electors in the City of Lafayette as of the date the certificates were issued and at the last preceding election held on November 5, 1940. This certificate, together with the recall petitions, was transmitted to the Secretary of State and the latter, acting under the provisions of Section 4 of Act 121 of 1921, Ex.Sess., certified upon the recall petitions that a sufficient number of signatures had been signed to the petitions to authorize the holding of a recall election. Thereafter, on June 9, 1941, the Governor issued a proclamation directing that a special election be held in the City of Lafayette on Tuesday, August 12, 1941, for the purpose of determining whether the relators should be recalled and commanding the Board of
 
 *496
 
 Supervisors of Election of the Parish of Lafayette and all other officers charged by law with any duties in connection therewith to cause said election to be held and the return thereof to be made in the manner and form prescribed by law.
 

 On June 23, 1941, the relators instituted this suit seeking to enjoin the holding of the recall election on the following grounds:
 

 (1) That Act 121 of the Extra Session of 1921, which is the general law providing for a recall of State, parish or municipal officers, has no application to them as officers of the City of Lafayette since proceedings for the recall of officers of the City of Lafayette are regulated and governed exclusively by specific provisions contained in the Charter of that City, that is, Act 310 of 1914 as amended, a special law which was not repealed by the enactment of the general recall law (Act 121 of 1921, Ex.Sess.).
 

 (2) In the alternative, that, if the court should hold that Act 121 of 1921, Ex. Sess., is applicable to them, then the respondents should nevertheless be enjoined from carrying out the proclamation of the Governor because the recall petitions do not contain the legal signatures of the percentage of qualified electors of the City of Lafayette required by law to authorize an election for their recall. They specifically charge (a) that the recall petitions contain the signatures of five persons who have withdrawn their names from the petitions; (b) that, in the case of relator Peck there were 269, and in the case of relator Roy there were 279, electors who were unable to write and whose marks were made on the petition by the circulator without having two witnesses subscribing thereto as required by Section 14 of Act 121 of 1921, Ex.Sess.; (c) that there were 49 persons in the case of relator Roy and 44 in the case of relator Peck whose names, appear on the petitions but who did not actually sign them and that, therefore none of these names should have been considered by the Secretary of State and the Governor in determining whether the petitions contained the signatures of the required number of electors to authorize the proclamation for the recall election.
 

 Upon the showing made by relators in their petition, the District Judge granted a temporary restraining order and issued a rule nisi for the respondents to show cause why the relief prayed for by relators, should not' be granted. Upon the return day of the rule nisi, the respondents appeared and filed (1) exceptions of no right or cause of action; (2) exceptions to the jurisdiction of the court ratione materiae and (3) an answer in which they denied that the relators are entitled to the relief sought.
 

 After a hearing on the issues thus presented, the judge sustained the exceptions of no right or cause of action and the exceptions to the jurisdiction of the court and dismissed relators’ suit.
 

 We are unable to discern merit in the first proposition advanced by the relators, that is, that the Governor had no right to issue his proclamation for a recall election under the provisions of Act 121 of 1921, Ex.Sess., because the recall of officers
 
 *498
 
 of the City of Lafayette is governed exclusively hy the Charter of that City. Act 310 of 1914. The provisions of the Charter of the City of Lafayette relating to recall elections, which declare in effect that any officer' sought to he recalled shall run as a candidate in the recall election, are in conflict with, and have been repealed by, Article 9, Section 9, of the Constitution of 1921 ordaining that the Legislature may-pass laws for' the recall of any State, district, parish, municipal or ward officer “provided, the ■ sole issue tendered at any recall election shall be whether such officer shall be recalled”. Act 121 of the Extra Session of 1921, which was enacted pursuant to and under the authority of Article 9, Section 9 of the Constitution of 1921, is therefore applicable to the relators.
 

 We pass on, therefore, to a consideration of the exceptions to the jurisdiction and the exceptions of no right or cause of action, which were sustained by the District Judge. The relators seek to enjoin the respondents from complying with the proclamation of the Governor on the ground that the proclamation was improvidently issued because the petitions for their recall do not contain the legal signatures of 25% of the electorate of the 'City of Lafayette as required by Act 121 of 1921, Ex.Sess., under which the recall election has been ordered. They allege that the Registrar of Voters, the Secretary of State and the Governor were in error in accepting as legal signatures to the petitions over 269 names on the petition for Peck’s recall and over 279 names on the petition for Roy’s recall and that, with the elimination of all or a portion of these illegal signatures, the recall petitions are not signed by the number of voters required by law.
 

 Respondents claim, however, that, notwithstanding this,' the court was without jurisdiction to grant the relief prayed for by the relators and that the petition does not set forth a cause of action for the following reasons: (1) that an injunction will not issue to prevent the holding of a recall election at a time when the proclamation has already issued calling the election and (2) that the issuance of an injunction in a case such as this would be premature since the relators have no property rights in their positions as officers of the City of Lafayette and no injury can be shown by them until after the recall election is held and they have been ousted from their positions.
 

 While it is ordinarily true that an injunction will not issue to prevent the holding of an election (See 32 Corpus Juris, Sections 401 and 402, Roudanez v. Mayor, etc., of New Orleans, 29 La.Ann. 271, Town of Ponchatoula v. Police Jury, 120 La. 1040, 46 So. 16, and Dubuisson v. Board of Supervisors of Elections, 123 La. 443, 49 So. 15), this general rule cannot be maintained in the instant case for the reason that, by Section 15 of Act 121 of 1921, Ex.Sess. (the statute under which the recall election is authorized), the relators are granted the right to contest the recall election or the proceedings leading up to the proposed recall election in any court of competent jurisdiction for fraud or other illegality. That section declares:
 

 
 *500
 
 “That nothing herein contained shall be construed to deny to any officer recalled,
 
 or whose recall is sought, under the provisions of this act,
 
 the right to contest any such recall,
 
 or any proceedings had in relation thereto,
 
 in any Court of competent jurisdiction, for fraud
 
 or other illegality.”
 
 (Italics ours.)
 

 Counsel for the respondents, however, maintain that Section 15 of the Act cannot be regarded as authority for the right of the court to issue an injunction to prevent the holding of a recall election because the language of the section is negative and confers no right of action that does not exist in other laws and in similar cases and that the remedies existing under other laws with reference to elections do not include the right to enjoin the holding of an election which has been proclaimed and fixed. We are unable to -follow this line of reasoning. In the first place, we cannot agree that the language of the section is negative. It proclaims in effect that, although the Governor is authorized to call an election for the recall of an officer upon a petition showing on its face that at least 25% of the electorate desire such recall election, the officer who is sought to be recalled shall not be denied the right to contest the proceedings on the ground of illegality. Moreover, even if we were to concede that the language used is of a negative character, the negative is coupled with an affirmative recognition of the right of the officer sought to be recalled to contest the proceedings leading up to the issuance of the proclamation. To hold otherwise would be to say that the proclamation of the Governor is final and that the legality of the recall proceedings cannot be inquired into by the courts prior to the election. Such a conclusion would obviously be contrary to the clear legislative mandate that Act 121 of 1921, Ex.Sess., shall not be construed so as to deprive the officer sought to be recalled of the right to test the validity of the recall proceedings in court and would have the effect of nullifying the provisions of Section 15 of the Act. This we cannot and will not do.
 

 Counsel for respondents further contend that the relators have no property rights whatever in the offices they hold and that since the Governor has acted upon evidence furnished him, which he believed to be sufficient, the courts are without power to restrain respondents from carrying out the mandate of the Chief Executive. We see no merit in this contention because Section 15 of the statute makes it plain that, notwithstanding the edict of the Governor, the officer sought to be recalled has the right to have the courts inquire into and pass upon the legality of the proceedings. It is also certain that relators have no adequate redress aj: law and, since the election is fixed for August 12, 1941, an injunction is the only effective remedy afforded to them in the event they are able to prove the charges made in their petition.
 

 Respondents further say that relators should not be permitted to maintain their action for an injunction because they had ample opportunity to have the matters, of which they now complain, corrected when the petitions for their recall were on file with the Registrar of Voters and the Secretary of State prior to the time the
 
 *502
 
 ■Governor issued his proclamation. But we cannot see how relators’ failure to oppose the petitions for their recall while these petitions were in the hands of either the Registrar of Voters or the Secretary of State can have the effect of depriving them of the rights granted by Section 15 of the Act.
 

 As an additional ground in support of their exceptions of no cause of action, respondents maintain that, if all of the alleged illegal signatures to the recall petitions are eliminated therefrom, the petitions nevertheless contain the signatures of the required percentage of voters to authorize the recall election. This contention is based upon the premise that the Governor is empowered to issue a proclamation for the recall of an officer where the petition contains the signatures of 25% of the electorate of the municipality as of the date of the execution of the certificate by the Registrar of Voters even though it appears from the petition that the signatures of less than 25% of the voters at the last preceding election have not been obtained.
 

 The proposition is untenable. The pertinent portion of Section 5 of the Act, under which the Governor is authorized to call an election, reads as follows:
 

 “That within five days after petition for a recall election is presented to the Governor * * *, in accordance with the provisions of this act,
 
 if the required number of registered voters qualified to vote at the last preceding election appear thereon as having signed the
 
 same, calculated from the certificates of the Registrars of Voters and Secretary of State as herein-before provided, then the said Governor * * *, shall issue a proclamation * * (Italics ours)
 

 The foregoing provision gives the Governor the right to call the election only in case the number of signers of the petition-equals the required percentage of the total number of registered voters qualified to vote at the last preceding election.
 

 Respondents say, however, that Section 5 of the Act is ambiguous because it makes it necessary for the Governor to make his calculations “from the certificates of the Registrars of Voters and Secretary of State as hereinbefore provided” and they point with confidence to Section 2 of the Act which makes it the duty of the Registrar of Voters to merely certify the number of names appearing on the recall petition and the total number of qualified electors of the parish, municipality or ward as of the date of the execution of such certificate.
 

 Since Section 2 of the Act does not require the Registrar of Voters to certify the number of qualified voters entitled to vote at the last preceding election, it is apparent that the Governor is unable, by an examination of the certificate of the Registrar, to calculate whether the required percentage of voters have signed the recall petition. Hence, the provisions of Section 2 of the Act, which require the Registrar of Voters merely to certify the number of qualified electors of the municipality, etc., as of the date of the execution of the certificate and that portion of Section 5 of the Act, which requires the Gov
 
 *504
 
 ernor to make his calculations from the certificate of the Registrar of Voters and the Secretary of State, would seem to conflict with that portion of Section 5 of the Act which declares that the Governor shall issue his proclamation only if the required number of registered voters qualified to vote at the last preceding election have signed the recall petition. However, it is to be noted that the calculations by the Governor are to be made not only from the certificate of the Registrar of Voters but also from the certificate of the Secretary of State. Section 4 of the Act provides that it shall be the duty of the Secretary of State to certify upon the recall petition that the number of signatures required under the statute have been signed to the recall petition before such petition is presented to the Governor. This section must be read in connection with Section 5 of the Act which permits the Governor to issue a proclamation only in case the recall petition is signed by 25% of the registered voters who were qualified to vote
 
 at
 
 the last preceding election. Obviously, the reason for requiring that the Secretary of State to issue his certificate is because he has the official records in his office showing the number of persons voting in the ward, municipality or parish at the last preceding election. See Pinder v. Board of Supervisors, La.App.First Circuit, 146 So. 715, 716. Hence, from the certificate of the Secretary of State, the Governor is able to make the necessary calculations.
 

 At all events, even if it be conceded that the provisions of Section 5 of the Act conflict to some extent with the provisions of Section 2, it is perfectly plain that the mandate directed to the Governor by Section 5 must prevail since he has m> right to issue a proclamation for a recall election unless the signatures of the required number of registered voters qualified to vote at the last preceding election appear upon the recall petition. Furthermore, we cannot believe that the Legislature ever intended to permit an officer to be recalled upon the signatures of a percentage of voters qualified to vote at the time the recall petition is presented to the Registrar of Voters for it would make it entirely too easy for a very small number of voters to file such a petition immediately after a new State Registration of voters and at a time when only a small percentage of the electorate had qualified.
 

 In addition, the conclusion we have reached on this point is in conformity with the prior contemporaneous construction and practice which has been given to the provisions of the statute by State officers, as we are informed by counsel on both sides of the controversy that the Attorney General has recently on three separate occasions, to-wit January 13, January 22 and March 12, 1941, rendered opinions to various Parish Registrars of- Voters to the effect that the Governor is not authorized to issue a proclamation for a recall election under Act 121 of 1921, Ex.Sess., unless 25% of the voters, who were qualified at the last preceding election, have signed the recall petition.
 

 Lastly, it is contended by the respondents that the allegations of relators' peti
 
 *506
 
 tion are insufficient to show that they are entitled to the relief sought for the reason that most of the alleged illegal signatures, of which they complain, are absolutely genuine. This point has reference to the allegations contained in relators’ petition that in the case of relator Peck there were 269 and in the case of relator Roy there were 279 electors who were unable to write and who made their marks upon the petitions without having the same subscribed to by two witnesses. Respondents contend that, in' spite of the fact that there were not two subscribing witnesses to these signatures, besides the circulator of the petition, they are nevertheless valid.
 

 Section 14 of the Act provides that:
 

 “It shall be unlawful and a violation of this act for any person to sign any name to a recall petition other than his or her own name, except in the case where a person is unable to write, in which case said incapacitated person shall affix his or her mark to said recall petition and the person circulating such recall petition shall affix thereto the name of such incapacitated person,
 
 provided he does so in the presence of two witnesses who shall also sign their names as witnesses to said mark"
 
 (Italics ours.)
 

 In the instant case, it appears that the marks were made by persons who were unable to write; that the circulator of the petition
 
 wrote
 
 the
 
 names
 
 of such persons at the point where the marks were made and that the circulator and another person signed their names as witnesses to. the mark. This was clearly a violation of Section 14 of the Act as that section requires that the circulator shall sign the name of the incapacitated person in the presence of two witnesses who shall also sign their names as witnesses to the mark. The circulator himself is not qualified to be a witness to the mark for the reason that he is required to sign the name of the incapacitated person in the presence of two other witnesses.
 

 Counsel for respondents nevertheless say that the provisions of Section 14 of the statute are purely prohibitory and penal in character and that the fact that an incapacitated person has made his mark on the petition in the presence of only one witness does not have the effect of invalidating the genuineness of the signature. We cannot agree with this contention. The Legislature, by providing that it would be a misdemeanor for any person to sign the name of another to a recall petition and by further providing .the manner in which an incapacitated person should affix his mark to such a petition, plainly expressed its intention that names signed to a recall petition in any manner other than that prescribed by the Act would be illegal and of no effect.
 

 For the reasons assigned, the rule to show cause is made absolute and the judgment of the District Court dismissing relators’ suit on the exceptions of the respondents is annulled and set aside; the exceptions of no right or cause of action and the exceptions to the jurisdiction of the court ratione materiae are overruled and the case is now remanded to the Fifteenth Judicial District Court for the Parish of
 
 *508
 
 Lafayette with instructions to the respondent judge to decide the question presented on the merits of the rule nisi for a preliminary injunction and for further proceedings consistent with the views herein expressed.