14 So.2d 855

**WAGGONER et al. v. GRANT PARISH POLICE JURY et al.**

No. 36695.

June 21, 1943.

Rehearing Denied July 13, 1943.

See, also, 198 La. 798, 4 So.2d 833.

John R. Hunter & Son, of Alexandria, for plaintiffs and appellants.

Harry Fuller, of Winnfield, and C. A. Barnett, of Ruston, for defendants and appellees.

ODOM, Justice.

At a local option election held in the Parish of Grant on June 17, 1941, a majority of those voting at the election voted against the issuance of licenses for the sale of intoxicating liquors in the parish except in certain designated localities.

On June 19, the police jury promulgated the results of the election, and on the same day adopted an ordinance carrying into effect the results of the election, prohibiting the sale of intoxicating liquors in the parish, and prescribing penalties for the violation of its provisions. The local option election was called and held under the provisions of Act No. 17 of the First Extra Session of 1935, which, according to its title, is an act "Providing for the exercise of local option in the parishes, wards and municipalities of the State", etc.

On July 17, 1941, the plaintiffs Waggoner, Hawthorn, and Warford, who at that time were engaged in the business of selling intoxicating liquors in Grant Parish, petitioned the court for a preliminary writ of injunction enjoining, restraining, and prohibiting the judge of the district court, the district attorney, the police jury, and the sheriff of the parish from instituting or

undertaking any civil or criminal actions under said ordinance and from taking any steps of any character to enforce its provisions. They prayed for the issuance of a rule nisi directing the defendants, and each of them, to show cause, on a day and at an hour to be fixed by the court, why a preliminary writ of injunction should not issue. They attached to and made part of their petition certain ordinances of the police jury and other documents. The court ordered that a rule issue as prayed for by the plaintiffs.

The ground on which the preliminary writ of injunction was sought was that the ordinance adopted by the police jury making it unlawful to sell or otherwise handle intoxicating liquors in Grant Parish was illegal, null, and void for the following, among other, reasons:

(1) That the petition requesting the police jury to order the election did not contain 25 per cent of the qualified voters of the parish, in that a large percentage of the names on the petition were not signed by the persons themselves; that their names were affixed to the petition by others without any authority on the part of the alleged signers, and that, in instances where signatures were affixed by mark, the marks were not witnessed and were placed thereon without authority.

(2) That the petition was presented to the police jury on December 9, 1940, and that the election should have been called to be held within 90 days thereafter.

(3) That, after the election had been called and ordered held on April 22, 1941, the police jury was without authority to

postpone the said election and to extend the date of holding the same from April 22 to June 17, 1941.

The district attorney, representing the defendants, filed several exceptions, which were overruled by the court. A hearing was had on the rule to show cause as directed by the judge. At the hearing numerous documents and exhibits were filed, and approximately 200 witnesses were summoned by the plaintiffs, and 122 of them testified. The defendants called and examined 11 witnesses.

After the hearing on the rule, there was judgment ordering that the plaintiffs' application for a preliminary writ in injunction "be and the same is hereby denied and plaintiffs' demands rejected at their cost; that, accordingly, the rule herein issued be and the same is hereby dismissed".

After the rendition and signing of this judgment, the plaintiffs asked for, and were granted, appeals devolutive and suspensive to this court. Counsel for plaintiffs announced to the court that they would apply to the Supreme Court for writs of certiorari, prohibition, and mandamus, on the ground that the appeals granted did not afford them adequate protection or an adequate remedy. The application for writs was made to this court of August 25, and the writs were granted. When the writs came up for consideration, we held that the plaintiffs were entitled to a devolutive but not a suspensive appeal from the judgment rendered, and that, since the plaintiffs were at that time engaged in the business of selling and dispensing intoxicating liquors in Grant Parish and had considerable sums

invested in connection with the conduct of such business, and since the enforcement of the ordinance, if illegal, would, in effect, destroy their property without due process of law, a devolutive appeal did not afford them an adequate remedy. We held that, on the showing made by the plaintiffs, who were relators in the application for the writs, it was proper for this court to exercise its supervisory power and make the writs peremptory, to the end that no irreparable injury might be done relators pending a final decision of the case on its merits. Accordingly, we directed and commanded the judge of the district court to grant forthwith to plaintiffs, relators, a preliminary writ of injunction as prayed for by them, the writ to remain in force and effect until the final decision of the case by this court on appeal. Waggoner et al. v. Grant Parish Police Jury et al., 198 La. 798, 4 So.2d 833.

We did not pass on the merits of the case at that time. The case is now before us on its merits.

The plaintiffs' first and principal point is that the ordinance adopted by the Police Jury of Grant Parish prohibiting the sale of intoxicating liquors is null, void, and of no effect for the reason that the petition requesting the police jury to order the election did not contain the signatures of 25 per cent of the qualified voters of the parish.

Section 4, Act No. 17 of the First Extra Session of 1935, under which statute the local option election was called and held, provides that an election to determine whether or not the business of selling in-

toxicating liquors shall be licensed or permitted in any parish, ward, or municipality of the state "shall be ordered by the governing authority of such parish or municipality only upon petition of twenty-five per centum (25%) of the duly qualified voters of such parish, ward or municipality, to be certified by the Registrar of Voters".

■ It is conceded by counsel for the police jury and the other defendants that, if the petition presented to the police jury requesting that a local option election be held in the parish was not signed by at least 25 per cent of the qualified voters of the parish, the election was not legally called and held, and that therefore the ordinance of the police jury prohibiting the liquor traffic in the Parish of Grant is null, void, and of no effect.

■ The record shows that, at the time this petition was presented to the police jury, there were 5982 qualified voters in the parish. It was necessary, therefore, that the petition be signed by at least 1496 persons who were qualified to vote. There appeared on the petition presented the names of 1766 persons. This petition was presented to the Registrar of Voters of Grant Parish, who, after a careful check, certified that, of the 1,766 names appearing thereon, only 1,530 were qualified electors. Since only 1,496 petitioners were necessary, there was a margin of 34 in excess of the required percentage.

Counsel for plaintiffs concede that the petition contains the names of more qualified electors than the law requires. Their contention is that, of the 1,530 names appearing on the petition as qualified electors,

approximately 100 were not written thereon by the petitioners themselves, but were placed thereon by others "without any authority on the part of the alleged signers, and in direct conflict of the laws of the State of Louisiana; that many of the alleged signers of said petition did not sign said petition at all, and an 'X' was placed by their names without the alleged marks being witnessed, and without any authorization on the part of the alleged signers of said petition" (quotation from Paragraph 23 of plaintiffs' petition).

A check of the record shows that nearly 100 of the 1530 names affixed to the petition were not written thereon by the petitioners' own hand. Counsel's contention is that the names appearing on the petition not written by the hand of the petitioners themselves should not be counted.

It was proved at the trial that, of the 1,530 names of qualified electors appearing on the petition, at least 89 of them were not written thereon by the hand of the petitioners; so that, if these 89 names should be stricken from the petition, it clearly appears that the petition was not signed by the requisite number of electors.

■ As we have stated, the plaintiffs called as witnesses more than 100 persons whose names appeared on the petition. A careful check of the testimony shows that, as to approximately 54 of these, while they did not sign the petition with their own hand, yet their names were written thereon in their presence, with their authorization, and as directed by them. Some of these were sick or so afflicted that they could not sign at the time the petition was presented to

them, and others could not write or sign their names. Counsel for plaintiffs argue that the names of these 54 should be stricken from the petition.

■ We do not think so. This court held in the case of Meyer v. King, 29 La. Ann. 567, that the authority to sign another's name to an act, if done by order of and in the presence of the principal, need not be in writing. In a much later case, that of Coats v. Guaranty Bank & Trust Co., 174 La. 503, 141 So. 41, this court held that, where a person's name is signed for him at his direction and in his presence, the signature becomes his own and is sufficient to give the same validity to the instrument as though written by him. In support of its ruling the court cited 36 Cyc. 451, verbo "Signatures", point 28, and 2 C.J. 451, verbo "Agency", Section 51 [2 C.J.S., Agency, § 26]; and a long list of decisions by this and other courts, including the case of Meyer v. King, supra.

"A signature may also be made for a person by the hand of another, acting in his presence, and at his direction, request, or acquiescence, unless a statute provides otherwise, and has the same validity as though written by the person himself." Signatures, 58 C.J. 726, Section 14.

■ We hold, as we must under the authorities cited, that the signatures written on the petition by the hand of another in the presence and at the direction of the voters in this case have the same validity as though written by the voters themselves.

■ A careful check of the testimony shows that 27 of the qualified voters whose

names were on the petition did not sign the petition with their own hand and were not present when their names were signed thereto by others, yet they had in advance specifically authorized those others to sign their names for them. In other words, they verbally appointed other persons as their agents to sign the petition for them. The record further shows that six of the qualified electors whose names were on the petition did not authorize anyone in advance to sign for them, but, when they were apprised later that their names had been signed thereto, they gave their consent and approval to the signing. The names of these six should not be counted. Two others should not be counted. One of these parties did not know who signed for her and was not informed that her name was on the petition until after the election. The other, whose name was signed by his wife, told her, when she informed him afterwards that she had signed for him, that she should not have done so.

■ But no valid reason has been suggested why the names of the 27 qualified electors who signed the petition, not in person, but by and through their duly authorized agents, should not be counted. These 27 voters specifically conferred upon designated persons the power and authority to sign their names for them. The general rule is that what one may do in person he may do through another as his agent. The Revised Civil Code so provides.

"A mandate, procuration or letter of attorney is an act by which one person gives power to another to transact for him and

in his name, one or several affairs." R.C. C. Art. 2985.

A power of attorney may be given verbally. R.C.C. Art. 2992. In Miller v. New Orleans Canal & Banking Co., 8 Rob. 236, it was held that no particular form is required for a mandate, and that, while for certain purposes it must be express and special, yet for others it may be verbal and general. There are limitations to the rule that a power of attorney may be given verbally, but those limitations have no application to a case of this kind. Plaintiffs alleged in Paragraph 23 of their petition that a large percentage of the alleged signers did not sign the petition at all, and that their names were affixed thereto "without any authority on the part of the alleged signers, and in direct conflict of the laws of the State of Louisiana". We find only eight petitioners whose names were signed without their authority. Twenty-seven verbally authorized their names to be signed.

 Act No. 17 of the First Extra Session of 1935, which provides for the exercise of the right of local option and which provides that the governing authority may call an election only upon petition of 25 per cent of the duly qualified voters of the parish, unquestionably contemplates that the petition is to be in writing. But it does not specifically require that the petition be signed in person by the petitioners, as does Act No. 121 of the Extra Session of 1921, which provides that an election to recall certain designated officers shall be called on the petition of 25 per cent of the qualified electors of the parish, ward, or

municipality, as the case may be. Section 14 of that act provides that it shall be unlawful and a violation of the act for any person to sign any name to a recall petition other than his own name, except in a case where a person is unable to read or write, in which case the incapacitated person shall affix his or her mark to the said recall petition, and the person circulating such recall petition shall affix thereto the name of such incapacitated person, provided he does so in the presence of two other persons, who shall sign as witnesses. See Roy et al. v. Board of Supervisors of Elections, 198 La. 489, 3 So.2d 747.

In the case of McAuliffe v. Helm, 157 Ky. 626, 163 S.W. 1091, 1093, the main issue involved was identical with the main issue involved in the case presently before us. Under a statute of the State of Kentucky, it is provided that local option elections shall be called and held upon the petition of at least 25 per cent of the qualified electors of certain local subdivisions of the state. In that case, as here, the petition contained the names of many persons not written by the hand of the petitioners themselves, and the election was contested on that ground. The court said:

"Again, in many instances in this case the names of the petitioners were affixed to the petition by some person other than the petitioner, and in some instances not even in the presence of the petitioners. The question, therefore, arises, can a person who is a legal voter authorize another person to sign the voter's name to the petition? And, if that can be done in the presence of the petitioner who, perhaps, can neither read nor write, can it also be

done [by them] in the absence of the petitioner, upon a mere verbal authorization?

"It is claimed there are many such instances in the case before us, and that the legality of the petition and the result of the election may depend upon the decision of that question in connection with these particular petitioners."

The court said further:

"If, in the case at bar, the persons who signed the names of others to the petition had authority from them to so sign their names, the persons who signed the names of such others could not be punished under this statute. In our opinion one person may sign the name of another to a petition to be presented to the county court under section 2554, supra, provided he has authority from the person whose name is so signed; and the authority need not be in writing."

It is not alleged, and is not now contended, that any fraud or deception was practiced upon any voter whose name was affixed to the petition out of the voter's presence.

We think that the names should be counted in all cases where the names of the voters were affixed to the petition by another in their presence and at their direction, and in all cases where the names were affixed thereto by another with express authorization given beforehand, even though not signed in the voters' presence.

■ Counsel for plaintiffs concede that, unless they succeed in having at least 35 names erased from the petition, they have no case on this point. According to the view which we take and have expressed above, plaintiffs have failed to show that

as many as 35 names should be stricken from the petition.

The other two points stressed by counsel for plaintiffs are (1) that the election should have been called and held within 90 days after the petition was presented to the police jury, and (2) that, since the election was ordered to be held on April 22, 1941, the police jury was without authority to postpone the date to June 17, 1941. These two objections are so closely interrelated that we shall discuss them together.

The facts are that the petition was presented to the police jury on December 9, 1940, and that the election was ordered to be held on April 22, 1941, more than 90 days thereafter, and that prior to April 22, the date first set for the holding of the election, the police jury adopted a resolution postponing the election from April 22 to June 17, 1941.

■ We find no merit in either of these contentions. Counsel base their contention that the election should have been held within 90 days after the petition was presented, on the provisions of Section 25 of Act No. 15 of 1934, which provides that, whenever a petition or petitions designed to secure the calling and holding of an election for the purpose of taking the sense of the qualified electors on the question whether spirituous or intoxicating liquors shall be sold "shall be presented to the governing body of any parish, city or town and shall contain thirty-three and one-third (33⅓%) per cent or more of the qualified electors of the subdivision affected, then the said governing body shall proceed to call an election, to be held within ninety (90) days

from the date said petition or petitions shall have been presented".

Act No. 15 of 1934 is an act "To regulate the traffic in malt, vinous, spirituous, alcoholic or intoxicating liquors, containing more than six (6%) per centum of alcohol by volume as defined in this Act, and, as incidental to such regulation, to provide additional revenue for the State of Louisiana by the levying of an excise or license tax * * * on all such malt, vinous, spirituous, alcoholic or intoxicating liquors containing more than six per centum (6%) of alcohol by volume, sold, handled, used, consumed, stored or distributed in the State of Louisiana".

The election in this case was called and held under Act No. 17 of the First Extra Session of 1935, which provides "for the exercise of local option in the parishes, wards and municipalities of the State". It provides in Section 4 that an election to determine whether the business of engaging in the liquor traffic shall be permitted or prohibited "shall be ordered by the governing authority of such parish or municipality only upon petition of twenty-five per centum (25%) of the duly qualified voters of such parish, ward or municipality". It does not require that the election shall be called within any specified time after the petition is presented to the police jury or to the governing authority of the municipality, as the case may be.

A reading of Act No. 17 of the First Extra Session of 1935 shows beyond question, we think, that the Legislature intended to, and did, enact new and complete legislation relating to the question of the exercise of local option in this state. It sets up at great length and in detail the machinery for the calling and holding of elections to take the sense of the qualified electors touching the question whether intoxicating liquors shall be produced, manufactured, or handled, and provides that, in case such an election is held and a majority of those voting at the election shall be against the manufacture, handling, or sale of such intoxicating liquors, then such traffic shall not be licensed or permitted therein. In so far as the exercise of local option is concerned, it is clear, we think, that the Legislature intended that this act supersede all other acts on the same subject matter. It provides in Section 7 that all those portions of Act No. 15 of 1934 "in conflict herewith be and the same are hereby repealed". Section 25 of Act No. 15 of 1934, which provides for the calling and holding of such elections upon the petition of 33⅓ per cent of the voters, is in direct conflict with Section 4 of Act No. 17 of the First Extra Session of 1935, which provides that an election shall be ordered only upon the petition of 25 per cent of the duly qualified voters. Counsel concede this, but seem to argue that the 90-day clause found in the 1934 act was not repealed. We think that clause is in conflict with the general provisions of the 1935 act, and was repealed by implication. Since by the adoption of the 1935 act the Legislature obviously intended to set up new rules and regulations for the exercise of local option, if it had intended that such elections be held within 90 days after the petition was presented to the governing authority, it would have said so in plain terms.

We do not think that the police jury abused its discretion in postponing the election from April 22 to June 17. It appears that it was made known to the police jury that a great many of the citizens of the parish had not registered and could not register and qualify by April 22, and that the purpose of postponing the election was to afford them ample opportunity to qualify themselves to vote. This was as much to the advantage of the plaintiffs and all others who, like them, were in favor of the liquor traffic as it was to the advantage of those who opposed it. There is nothing to indicate that the plaintiffs opposed the postponement of the election, and it is conceded that they participated therein without complaint. Furthermore, it is alleged by the defendants, and not denied by the plaintiffs, that the election was postponed at the request of persons who were opposed to prohibition.

For the reasons assigned, it is ordered that all such preliminary writs of injunction as the Honorable Cas Moss, Judge of the Eighth Judicial District Court for the Parish of Grant, may have granted in obedience to our decree rendered November 3, 1941, in the case of Waggoner et al. v. Police Jury et al., 198 La. 798, 4 So.2d 833, be and they are hereby set aside and annulled; and further ordered and decreed that the original judgment rendered by the said judge on August 21, 1941, rejecting plaintiffs' demands to have the ordinance of the police jury declared illegal, null, and void, and dismissing their suit at their costs, be and the same is now affirmed; costs to be paid by appellants.