DORÉ, Judge.
The plaintiffs, Martha Holland and James R. Cobb, seek to annul and have declared unconstitutional an ordinance of the Police Jury of Vernon Parish, adopted pursuant to a local option election held in and for the unincorporated portion of the Parish, which prohibited and made illegal the sale of alcoholic beverages in Ward 1 of Vernon Parish, with the Town of Leesville and the Village of New Llano being excepted. The ■case comes up on appeal from a judgment of the district court sustaining defendants’ ■exceptions of no right of action and no cause of action.
In their lengthy petition the plaintiffs. allege that they are residents of and quali- ' fied electors in Ward 1, Vernon Parish, residing in the unincorporated portion of the Ward, and that each one of them is engaged in the retail liquor business selling both beverages of low alcoholic content containing less than 6% alcohol by volume and beverages of high alcoholic content containing more than 6% by volume, with their respective business places both being operated in the. unincorporated portion of Ward L They further allege that each is the holder and owner of over $2,000 worth of bonus bonds issued by the State of Louisiana under the provisions of Section 10, Article 18 of the State Constitution, which is the amendment that was added to the Con-, stitution in 1948, Act No. 530 of 1948, authorizing the sale of bonds to provide funds for paying the soldiers’ bonus. The petition sets out that a number of qualified voters residing in the unincorporated portion of Ward 1 of Vernon Parish petitioned the Police Jury to call a local option or referendum election on the question of whether alcoholic beverages shall be sold in the unincorporated portion of the parish, the matter being broken down into three propositions in accord generally with the provisions of the local option law, LSA-R.S. 26:583; that on October 16, 1950 the petition was filed with the Registrar of Voters, who certified that the petition contained 384 true signatures and that on October 16, 1950 there were 851 voters in Ward 1 exclusive of the incorporated units; that the Police Jury at its regular meeting on December 10, 1950, on a verbal motion voted to grant the election and fix the date thereof as February 6, 1951; that at the Police Jury meeting on December 10, 1950 petitioners appeared, along with other qualified electors and property tax payers residing in Ward 1, and filed a written protest as to why the local option election should not be held; that on December 15, 1950 the secretary of the Police Jury, aided by the Assistant District Attorney, prepared a written resolution ordering the election, and publication thereof was begun on December 20, 1950 in the official journal of the Police Jury; that on January 8, 1951 the Police Jury formally passed a resolution authorizing, the holding of the referendum election; that the election was held on February 6, 1951, as ordered, and that, according to a promulgation of the results of the election, all three propositions were carried by an affirmative vote of the qualified electors participating in the election (this allegation, found in paragraph XIX, is erroneous; the obvious intent was to say that the three propositions were voted down by a negative vote of the electors participating) ; that the Police Jury on February 12, 1951 promulgated the returns of the election and adopted Ordinance No. 3-1951 prohibiting the sale of beverages of low alcoholic content containing more than 3.2% alcohol by weight and not more than 6% alcohol by volume, prohibiting the sale of beverages of high alcoholic content containing more than 6% alcohol by volume for consumption on the premises, and prohibiting the sale of beverages of high alcoholic content by pack *585 age only and not for consumption on the premises, and providing penalties for the violation thereof.
Plaintiffs then allege that the petition, the election, the promulgation thereof, the ordinance adopted pursuant to the election, and all proceedings had in connection therewith are .unconstitutional, illegal, ultra vires, and null and void for the following reasons:
(1) The petition submitted to the electors was not worded so as to substantially comply with the provisions of .LSA-R.S. 26:583;
(2) The petition did not contain (was not signed by) 25% of the qualified electors of Ward 1 as required by LSA-R.S. 26: 582;
(3) The certificate of the Registrar of Voters snowed that the petition did not contain (was not signed by) 25% of the electors of Ward 1;
(4) The Registrar’s certificate did not comply with LSA-R.S. 26:585 in that- the Registrar did not certify as to the number of qualified voters in Ward 1 but only certified as to the number of voters in Ward 1 with the municipalities excepted;
(5) The Registrar’s certificate did not comply with LSA-R.S. 26:585 in that it “omits to certify the number of signatures not genuine or not signed and written in the manner required in Revised Statutes 26:583.”
(J6) If the Registrar had properly checked the petition and certified to it according to LSA-R.S. 26:585(7), a large number of names (apparently 181) would not have been counted for several reasons set out in the petition- (being primarily that the address of the voter was not complete and that the address and date were not written in the same handwriting as the signature); - and that 44 others should not' be counted because the signers timely requested that their names be removed;
(7) The resolution purported to have been passed on December 11, 1950, as well as the election itself should be declared null for the reason that the resolution was not adopted in accordance with LSA-R.S. 26:586, in that the resolution is purported to have been passed or adopted on December 11, 1950, whereas, in truth and in fact it was adopted by the Police Jury on January 8, 1951;
(8) The election and ordinance, along with the statute under which the election was held and the ordinance passed, are ultra vires and unconstitutional, being repugnant to Section 10 of Article 18 and Section 15 of Article 4 of the State Constitution.
The petition named as defendants the Sheriff, District Attorney, Police Jury, and Registrar of Voters of Vernon Parish, as well as the Secretary of the Police Jury. Complainants asked if or an injunction to prohibit defendants from instituting any civil or criminal proceedings or any action against petitioners for the purpose of enforcing Ordinance No. 3-1951, and prayed that the election, ordinance, and all proceedings in connection therewith be decreed ultra vires, unconstitutional, and null and void.
An exception to the procedural capacity of Martha Holland was filed'by the Police Jury. L. Roy Williams -(Secretary of the Police Jury) and Mrs. L. Roy Williams (Reg--istrar of Voters) .filed an exception of No Cause and No Right of Action; and the Police Jury filed an identical -exception. The Police Jury also filed an Exception of Res Judicata, setting out therein that another suit had previously been filed by Cobb having substantially the same demands and that in that suit judgment had been rendered rejecting plaintiff’s demands, which judgment had become final and so barred the present 'action.
In due course the exceptions came on for trial, at which time evidence was introduced and the matters argued. It is assumed, '■though the record does not show it, that the exception to the procedural capacity of Martha Holland and the exception of res judicata were overruled. On March 22, 1951, the trial judge signed a judgment 'which recited that some of the exceptions ■ were overruled (without showing which ' ones) and that' “evidence whs adduced on exception of no right of action and also in which counsel for both plaintiffs and de *586 fendants argued and submitted the question of the constitutionality of Sections 583 to 594, inclusive of Title 26 of the Revised Statutes of Louisiana for 1950”; and the decree sustained the exception of no cause and no right of action, denied the application for injunction, and dismissed the suit at plaintiffs’ cost.
After application by plaintiffs for a rehearing or a new trial the judge again sustained the exception of no cause and no right of action; but, relying on the Supreme Court decision in Waggoner v. Grant Parish Police Jury, 198 La. 798, 4 So.2d 833, and Id., 203 La. 1071, 14 So.2d 855, granted a preliminary injunction to enjoin defendants from taking any proceedings against plaintiffs under the provisions of Ordinance No. 3-1951 prior to a final judgment in this proceeding, conditioned on plaintiffs furnishing bond in the amount of $1,500. An appeal, both suspensive and devolutive, was granted to plaintiffs, who furnished bond as fixed by the court.
The attorneys for defendants have on this appeal brought into their argument Act No. 207 of 1902. This was a special act of the Legislature Which provided “that the sale of intoxicating liquor within five miles of the Leesville graded school is prohibited.” During the trial of the exceptions in the lower court evidence was introduced showing that plaintiffs’ places of business are within five miles of where the Leesville grade school was in 1902 and where the Leesville High School is now. But it is our view that Act No. 207 of 1902 has no bearing on the present case. Plaintiffs seek to annul and enjoin the enforcement of Ordinance No. 3-1951 adopted by the Police Jury of Vernon Parish in January, 1951; they are not attacking the legislative act of 1902. Whether that act has been or is now suspended, or whether it has been repealed is not now before the court. It might well be that if Ordinance No. 3-1951 should be decreed null and void the law enforcement officers could still close down plaintiffs’ places of business under the 1902 act; but whether or not they could is not involved in this suit, and that act has no bearing here.
Counsel for plaintiffs have argued strongly that the local option law contained in the LSA-Revised Statutes of 1950 is unconstitutional in so far as it authorizes local option elections on the question of whether beer shall be sold in any particular parish or locality, this supposed invalidity resting on two grounds, to-wit: (1st) Section 10 of Article 18 of the Constitution, an amendment of 1948 provides that the beer tax levied in 1948 is dedicated to the payment of bonds issued to raise money for the soldiers’ bonus, and it provides that until such bonds are paid the “tax shall not be abolished or reduced and no laws shall be adopted by the Legislature of Louisiana affecting adversely the collection thereof.” Counsel contend that to allow an area by local option election to vote beer out would be to reduce the tax or adversely affect the collection of it. (2nd) Counsel argue that plaintiffs and others who own some of the 1948 bonus bonds are the holders of contracts with the state that will be violated if Ward 1 of Vernon Parish is allowed by local option to vote beer out.
We do not consider that the trial court passed on the constitutionality of the local option law when it sustained the exception of no cause and no right of action; the court did not mention the constitutional issues. And we do not now pass on the constitutionality of that law either.
 One can readily see that the plaintiffs have alleged various and sundry facts in their petition’and for the purpose of tfte exception of no cause of' action, filed by the defendants in this case, the pleaded facts set forth in the petition must be accepted as true. If, in any part of plaintiffs’ petition, they allege facts, and the law authorizes the rendition of a judgment on any of the facts alleged, if evidence could be produced to substantiate them, then defendants’ exception of no cause of action should have been overruled and this case tried on its merits. We find in Articles 16, 17, 18 and 19 of plaintiffs’ petition, wherein the plaintiffs charge that the resolution purported to be adopted on December 11, 1950, was in truth and in fact adopted according to their allegations, on January 8, 1951. According *587 to LSA-R.S. 26:586, we find in the second paragraph, the following: “If the petition conforms to all the provisions of this Chapter, the governing authority shall order the election. The ordinance or resolution of the governing authority ordering the election shall he adopted at a regular meeting held not less than thirty nor more than forty-five days- from the date the petition was filed with the governing authority by the Registrar of Voters.” (Emphasis ours.)
According to the certificate of the president and the secretary of the Police Jury of Vernon Parish, we find that the petition was filed with said governing authority on October 30, 1950, and further according to the statute above quoted, the ordinance or resolution ordering the election must be adopted at a regular, meeting not less than 30 nor more than 45 days from the date the petition was filed with the said governing authority by the Registrar of Voters. Therefore, if, the resolution ordering the election was adopted on January 8,1951, instead of on December 11,1950, as charged in the petition, the resolution ordering the election would be null and void .because same does not fall within the requirements of the section hereina-bove quoted in that it was adopted after 45 days from the date the petition was filed with the Police Jury. Therefore, if plaintiffs are in a position to prove that the resolution was adopted on January 8, 1951, instead of on December 11, 1950, they certainly have stated a cause of action in so far as that proposition is concerned.
We next notice that the plaintiffs allege that many of the names were not properly signed in accordance with statutory requirements, on the petition, submitted to the governing authority of the parish, and in addition, 44 signers timely requested that their names be removed from the petition; that, if the registrar had properly checked the petition and properly certified it, these names would not have been counted with the result that the petition would not have contained even 25% of the qualified voters in the unincorporated portion of Ward 1. According to the last paragraph oif LSA-R.S. 26:583, we find as-follows: “Where signatures are made on more than one sheet, each sheet of the petition shall reproduce above the signatures the same matter as is on the first sheet. Each petitioner shall sign his name in his oven handwriting and shall twite his address and the date on which he signed, otherwise his signature shall be null and void. If an elector cannot sign his name because of age or physical condition, 'he may have his name and address and the date written by another and shall affix his ordinary ‘X’ mark in the presence of two competent electors,' who shall sign their names as witnesses to the mark.” (Emphasis ours.) In the italicized portion of this paragraph, we take it that each petitioner must do two things, first sign his name in his own handwriting and second, must write his address and the date on which he signed. Therefore, if he fails to do one or the other of the two propositions as required of him, the section says that his signature shall be null and Void. According to the last sentence of the above quoted paragraph we find in the case of where an elector who can not sign his name because of age or physical condition, that he' can have his name and address and the date written by another and shall affix his ordinary mark in the presence of competent electors who shall sign their names as witnesses to his mark, and the persons who sign it ifor him must also write for the petitioner, not only his name but also his address and the date written or the date of the signing of said petition. It is our appreciation that is only under those circumstances that someone else has the right to sign the name of the petitioner and write his address and date of said signing and then it must be done in accordance with said section. Therefore, we take it that the name, address and date that the said petition is signed are necessary factors in the signing of said petition, and that same must be done by petitioner himself unless the said petitioner falls in the category of the last sentence of the above quoted section.
According to the plaintiffs in this case, they allege that some 181 of the petitioners failed to write their addresses and *588 to give the date of the signing of said petition in their own handwriting and that 44 others should not be counted because the signers thereof timely requested that their nam.es be removed from said petition. Therefore, if 181 of the names found on the petition were not in accordance with the section as above quoted, and 44 others had requested that their names be withdrawn or removed from the petition, making a total of 225, we can very readily see that since the Registrar of Voters had certified that only 384 electors, out of a possible 851, had signed the petition and subtracting the 225 from the 384 figure would reveal the fact that the remainder of the petitioners did not constitute 25% of the qualified electors of the unincorporated portion of Ward 1 of Vernon Parish. If these allegations are correct and can be proven, then petitioners, provided they have a right of action, are entitled to have the election and ordinance declared null and void.
It is specifically provided in LSA-R.S. 26:591 that any elector who was qualified to vote in the election may contest the election in the same manner and under the same conditions as is provided by law for the contest of elections under the general and special laws of this state. In alleging that they are qualified electors of Ward 1 residing. in the unincorporated portion of the Ward and that they own.and operate business establishments located in the unincorporated portion of the Ward, which will be closed down if the ordinance is enforced, plaintiffs have certainly set forth a right of action. The issues raised by these allegations, and the constitutional questions, as well, should be disposed of upon a trial on the merits.
For these reasons the judgment of the trial court sustaining the exceptions of no cause and no right of action is reversed, annulled and set aside and this case is hereby remanded to the Eleventh Judicial District Court for the Parish of Vernon, to be tried on the merits; the costs of this appeal to be paid by the deféndants-appellees, and all other costs to await the final termination of the case.