BOLIN, Judge.
In response to a judgment in a slander of title suit, plaintiffs filed this petitory action on November 29, 1959, asserting title and rights claimed by them to the following described property:
North Half (N 54) of Northwest Quarter (NW 14) and Southeast Quarter (SE 54) of Northwest Quarter (NW 54) Section Eight (8) Township Seventeen (17) North, Range One (1) East, situated in Ouachita Parish, Louisiana.
Made defendants are Roxie Ann Butler, J. S. Holman and R. V. Jones. Intervening in the suit is Rosa B. Taylor who claims ownership of the following described property under a chain of title originating from the same instrument under which the named defendants claim:
Southeast Quarter (SE 54) of the Southwest Quarter. (SW 54) Section Five, and West 440 feet of the Northwest Quarter (NW J4) of the Northeast Quarter (NE 54) Section Eight (8) Township Seventeen (17) North, Range One (1) East, Ouachita Parish, Louisiana.
Brought in by means of third party petitions and made defendants therein are: Crescent Drilling Company, Inc., Mrs. Claribel Frazier McClendon, John Ricky McClendon, Mary Ann Coenen, E. M. Watkins, T. Arthur Grant, I. F. Bennett, William S. Stewart, Rell- Bowers, Martha B. Kilpatrick, individually and as surviving widow and testamentary executrix of the Estate of A. K. Kilpatrick, deceased, Martha Clayton Kilpatrick Kellogg, Nancy Jane *718 Kilpatrick Wilbert, and Howard L. Jones; and third party defendant and intervenor, Arkansas Louisiana Gas Company.
After numerous pleading’s and proceedings the case was tried, submitted and judgment rendered in favor of all plaintiffs, intervenors and third party defendants and against the original defendants and the intervenor, Rosa B. Taylor. From this judgment Roxie Ann Butler, J. S. Holman, R. V. Jones, Rosa B. Taylor and third party defendants, E. M. Watkins, Claribel F. McClendon, John R. McClendon and Margaret Ann Coenen, through her father, William R. Coenen, have appealed. (After this appeal was perfected Roxie Ann Butler died and substituted therefor as defendants are her duly qualified executors, Gus Bowers and Grady Dunway.)
. Numerous collateral issues are involved in this lawsuit and innumerable instances of alleged error on the part of the lower court are pointed out, but the two main contentions are: (1) The defendants are owners of the property involved by reason of a deed from M. M. Elmore to Georgia and Novie Elmore, defendants’ ancestors: (2) Should this deed be found to be invalid, it is nevertheless sufficient to form the basis of sustaining a plea of ten or thirty years prescription.
We attach primary importance to a determination of the correctness vel non of the lower court’s ruling that the deed under which defendants claim ownership was null and void because of proof the signature thereon was found not to be that of M. M. Elmore, the alleged vendor, and that there was no recital in the deed as to Elmore’s inability, nor reason for his failure, to sign.
Prerequisite to an understanding of the issues is a statement of facts. M. M. El-more, husband of Charity Elmore, owned approximately 240 acres of land. Plaintiffs claim an undivided interest in the title to this property as the legitimate heirs or vendees of four of the Elmore children and defendants-appellants claim to be the heirs or vendees of Georgia Elmore Taylor and Novie Elmore, the other two daughters of M. M. Elmore, whose ownership allegedly stems from the deed from their father.
On January 28, 1920, M. M. Elmore made a mortgage on the property to the Federal Land Bank of New Orleans to secure a loan of $1500. Subsequently Elmore became disabled and therefore lacked sufficient income to meet the payments to the bank. On December 30, 1922, M. M. Elmore and his wife, Charity, allegedly executed a deed by authentic act, in the presence of Adner Butler and John Elmore, who signed as witnesses, conveying to the two daughters, Novie Elmore and Georgia Taylor, all the property herein involved. This deed was purportedly signed by M. M. Elmore and Charity Elmore and was notarized by G. F. Sheppard. Recited as consideration for the conveyance was the assumption by the vendees of the debt to the Federal Land Bank.
Intervenor, Rosa B. Taylor, John Elmore and Rell Bowers were the children of Novie Elmore. They possessed part of the property by reason of a partition between Georgia Elmore Taylor and the heirs of Novie after the latter’s death in 1945.
At the trial of the case two examiners of questioned documents testified the signature of M. M. Elmore on the deed was written by someone other than Elmore. The expert appearing for defendants further testified that, from his examination of the instrument in question, G. F. Sheppard, Notary, signed for both Charity and Milor. It was proved during the trial that Milor Elmore knew how to read and write and that previous instruments executed by him had been signed in his own handwriting. Plaintiffs strenuously urge his signature on the deed, by which defendants assert title, was a forgery rendering the so-called authentic deed a lifeless instrument, conveying nothing to vendees.
Over the objection of plaintiffs’ counsel the lower court allowed Roxie Ann to testify that on the morning of December *719 30, 1922, she was at the Elmore place at which time the parties were preparing to go to Calhoun to make the deed; that Georgia Taylor, Novie Elmore, Adner Butler, John Elmore and Rosa B. Taylor accompanied M. M. and Charity; that they went in a wagon; and that she heard a discussion of the purpose of the trip. Preserved by a special bill of exception for examination by this court is the additional testimony of Roxie Ann Butler that on the date in question her grandfather, M. M. Elmore, had the “shakers” or “palsy” and her grandmother, Charity Elmore, was blind.
Subject to repeated objections of counsel Rosa B. Taylor, the only living member of the group shown to have accompanied M. M. and Charity Elmore to the office of the Notary, testified she saw the deed executed. When asked how the deed was executed she replied in the following language:
“Mr. Fred Sheppard was sitting to a desk and he made — got this deed— the paper — now I don’t know whether this piece or not but he did get a piece and when he got through typing he asked if Novie Elmore would come and sign her name and she did, then he asked if Georgia Taylor would come and sign her name and she did, then he asked M. M. Elmore to come and sign his name and he got up and went to sign his name and when he reached to get — and got the pen he was shaking his hand that way and he caught his hand with his, he said ‘wait just a minute, steady yourself’; and when he turned loose he shook it again and he asked him the question, ‘are you nervous or what is your trouble Milor’. Fie said ‘well I wouldn’t just know what my trouble is, I just know I’m shaking, that’s all.” He said ‘Well I don’t believe you are going to be able to write your name.’
^ *‡* ^
“He asked him to step around behind him, he said ‘and reach over my shoulder and put your finger on the pen and let me write for you’ and he did.”
When asked whom she meant by “he” she replied, “Mr. Fred Sheppard.”
Forceful and persuasive arguments have been presented by counsel for plaintiffs both in brief and in oral argument before this court. It is contended the failure of the notary to require M. M. and Charity to sign by the usual mark, if they knew not how to sign, would have been the only alternative to an actual signature by the parties in the absence of a written agreement conferring authority upon an agent to sign for the parties. In addition, counsel suggests the interest of the witnesses in the outcome of this litigation casts some doubt upon the version of events as related by Rosa B. Taylor and Roxie Ann Butler; but he argues, assuming the testimony of Rosa B. Taylor is true in all of its details, her admission the deed was not signed by the vendors coupled with the testimony of the experts fully demonstrates this is not the act of the vendors and, therefore, has no validity.
All parties to this suit agree the deed in question has the appearance of an authentic act as required by LSA-Civil Code, Article 2234 defining such an act:
“The authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in presence of two witnesses, aged at least fourteen years, or of three witnesses, if a party be blind. If a party does not know how to sign, the notary must cause him to affix his mark to the instrument.
“All proces verbal of sales of succession property, signed by the sheriff or other person making the same, by the purchaser and two witnesses, are authentic acts.”
Plaintiffs urge that oral or parol testimony may not be allowed against or beyond *720 what is contained in the authentic act, unless it be proved a forgery. Pertinent are LSA-Civil Code Articles 2236 and 2276:
Art. 2236:
“The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.”
Art. 2276:
“Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”
Since it was shown by lengthy testimony that the deed was not actually signed by the hand of M. M. Elmore and, since it purports to be his signature and not his mark, plaintiffs conclude the signature is a forgery.
Having opened the door to the introduction of parol evidence by the testimony of experts regarding the authenticity of El-more’s signature, plaintiffs now urge that no further testimony is admissible to show circumstances to prove that someone else signed in the presence of and with the consent of Elmore, for, they contend, this would vary the instrument.
The trial judge expressed the opinion the deed was a nullity in that it did not comply with the civil code articles pertaining to the transfer of title to immovables. (Arts. 2440, 2275, 2276, 2234, 2235 and 2236).
Both the lower court and plaintiffs have, we believe, erred in concluding the cases cited by defendants in support of the deed are inappropriate to the instant case. Plaintiffs rely simply upon proof the signature of M. M. Elmore was not in fact placed upon the instrument by him. While this is now conceded, we think the question of whether the signature was a forgery, i. e., false, requires examination of the cases in which, although the purported signer did not personally affix his signature, he was present and consented to such signing.
In the case of Coats v. Guaranty Bank & Trust Co., 174 La. 503, 141 So. 41 (1932) the Supreme Court had before it the question of the authenticity of a signature on bank stock belonging to a wife, owner of the stock, who allegedly was present and authorized her husband to endorse the stock in blank in her name. Both the lower court and the Supreme Court had little hesitancy in concluding the signature was valid and in holding:
“ * * * where a person’s name is signed for him at his direction and in his presence by another, the signature becomes his own, and is sufficient to give the same validity to an instrument as though written by the person himself. 36 Cyc. 451, Verbo Signatures, point 28, citing cases from Arkansas, Illinois, Indiana, Iowa, Kentucky, Maine, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New Hampshire, New York, Pennsylvania, Wisconsin, and England; also from Vermont and Georgia. See, also, Meyer v. King, 29 La.Ann. 567.”
The outstanding Louisiana opinion on signatures was rendered by the Supreme Court in Waggoner v. Grant Parish Police Jury, 203 La. 1071, 14 So.2d 855 (1943) in which a petition for local option election was under attack. There the plaintiffs' called as witnesses more than 100 persons whose names appeared on the petition. A careful check of the testimony showed that, as to approximately 54 of these, while they did not sign the petition with their own hand, yet their names were written thereon in their presence, with their authorization, and as directed by them. Some of these were sick or so afflicted they could not sign at the time the petition was presented to them, and others could not write or sign their names. Counsel for plaintiffs argued that the names of these 54 *721 should be stricken from the petition. The court held:
“We do not think so. This court held in the»case of Meyer v. King, 29 La. Ann. 567, that the authority to sign another’s name to an act, if done by order of and in the presence of the principal, need not be in writing. In a much later case, that of Coats v. Guaranty Bank & Trust Co., 174 La. 503, 141 So. 41, this court held that; where a person’s name is signed for him at his direction and in his presence, the signature becomes his ovan and is sufficient to give the same validity to the instrument as though written by him. * * *
“ ‘A signature may also be made for a person by the hand of another, acting in his presence, and at his direction, request, or acquiescence, unless a statute provides otherwise, and has the same validity as though written by the person himself.’ Signatures, 58 C.J. 726, Section 14.” (Emphasis supplied.)
In a much earlier case, In re Deshotels’ Estate, 153 La. 1096, 97 So. 203 (1923) the Supreme Court made the following pronouncement in a succession proceeding:
“The administrator is illiterate, and unable to sign his name. He denies having made his mark or touched the pen at the time the mark, which purports to be his, was made. No one testifies to having actually seen him touch the pen or make the mark. The facts and circumstances surrounding the entire matter, however, satisfy us that he either touched the pen, when the mark was made, or that it was made in his presence, with his knowledge, consent, and approval, either of which we think sufficient. The touching of the pen is a mere symbolic act, serving no other purpose than to show consent to the making of the mark. It is sufficient, when it appears that the mark was made in the presence of the party, whose signature it purports to be, with his knowledge and consent. See 36 Cyc. p. 451, § E.” (Emphasis supplied.)
The foregoing authorities convince us. the signature of M. M. Elmore, affixed by G. F. Sheppard, where the former was-present authorizing, aiding and consenting, became the signature of M. M. Elmore and thus effectively conveyed the property in dispute. In failing to so hold we think the lower court erred.
Inasmuch as we premise our decision on the lower court’s error with regard to the-validity of the deed, we pretermit a discussion of the pleas of ten and thirty years-acquisitive prescription.
For the assigned reasons the judgment of the lower court is reversed and set aside and judgment is rendered herein in favor of defendants and of intervenor, Rosa B. Taylor, and against plaintiffs declaring defendants and intervenor, their heirs and assigns,, to be the owners of the tracts separately set forth and described later herein of the property conveyed by deed dated December-30, 1922, from M. M. Elmore to Georgia Taylor and Novie Taylor, the entire property involved being more particularly described as follows:
North Half of Northwest Quarter (N t/2 of NW }4) and Southeast Quarter of the Northwest Quarter (SE 14 of NW }4) Section Eight (8) Township Seventeen (17) North, Range One (1) East, situated in Ouachita Parish, Louisiana, and the Southeast Quarter of the Southwest Quarter (SE }4 °f SW 14) Section Five (5) and the West 440' feet of the Northwest Quarter of the-Northeast Quarter (NW 14 of NE J4) Section Eight (8) Township Seventeen (17) Range One (1) East, Ouachita Parish, Louisiana.
The Estate of Roxie Ann Butler, represented in this appeal by her executors, Gus-
*722 Bowers and Grady Dunway, is recognized as owner of the following property:
The North Half of the Northwest Quarter and the Southeast Quarter of the Northwest Quarter, Section Eight, Township Seventeen North, Range One East, less and except property sold by Roxie Ann Butler to J. S. Holmon by deed dated December 1, 1951, recorded in Conveyance Book 491, page 356, and deed dated November 14, 1953 (correction deed) recorded in Conveyance Book 535, page 384, described as follows:
A certain lot or parcel of ground situated in the SE of NW J4 Section 8, T. 17 N., R. 1 E., particularly described as follows: From the southeast corner of said forty, run west along the south line thereof a distance of 140 yards for a place of beginning, thence continue west along the south line of said forty a distance of 70 yards, thence running back north, between parallel lines, parallel to the east line of said forty, a distance of 140 yards, and containing two (2) acres, more or less, less and except a parcel of land sold by Roxie Ann Butler to R. V. Jones by deed dated November 14, 1953, recorded in Conveyance Book 535, page 386, described as being: ■
A certain tract or parcel of land situated in the SE % of NW 14 of Section 8, T. 17 N., R. 1 E., particularly described as follows:
Commencing at the southeast corner of said forty, and running thence west along the south line thereof a distance of 140 yards, thence running back north, between parallel lines, one of which is the east line of said forty, a distance of 140 yards, containing four (4) acres, more or less.
Intervenor, Rosa B. Taylor, is recognized as the owner of the following described property:
Southeast Quarter of the Southwest Quarter (SE 14 of SW 14) Section Five (5) and the West 440 feet of the Northwest Quarter of the Northeast Quarter (NW ¡4 of NE ]4) Section Eight (8) Township Seventeen (17) North Range One (1) East, Ouachita Parish, Louisiana, subject to an oil and gas lease covering her above described property in favor of' A. K. Kilpatrick and Dewitt Smith, which lease is recorded in the records of Ouachita Parish, Louisiana.
In view of the holding of this court, that the judgment of the lower court was erroneous, we conclude the titles of all parties in this suit derived by reason of deeds, assignments or leases from Roxie Ann Butler, J. S. Holman, R. V. Jones, Rosa B. Taylor, John Elmore or Rell Bowers remain as they were prior to institution of this action. As a result the partition between Georgia Elmore Taylor and the heirs of Novie Elmore, i. e., Rosa B. Taylor, John W. Elmore and Rell Bowers is declared to be valid.
All costs are assessed against plaintiffs-appellees.
Reversed and rendered.