317 So.2d 205 (1975)
Gordon M. WHITE et al.
v.
Emmett E. BATSON.
No. 10336.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
Writ Refused October 24, 1975.
*206 Larry D. Book, Baton Rouge, for appellants.
Darrell D. White, Baton Rouge, for appellee.
Before LOTTINGER and COVINGTON, JJ., and BAILES, J. Pro Tem.
BAILES, Judge Pro Tem.
This is an action for specific performance of a contract to buy certain immovable property located in the City of Baton Rouge. The court a quo ordered specific performance. The defendant appealed. We affirm.
On February 7, 1974, the defendant entered into an agreement with the plaintiffs wherein defendant contracted to purchase Lot 4, Square 18 South, Beauregard Town, Baton Rouge, Louisiana, from the plaintiffs for the sum of $50,000. The defendant refused to accept title to the property on the ground that plaintiffs' title is unmerchantable and suggestive of serious future litigation.
The facts are few and free from dispute. Before this Court the sole objection of the defendant to the title of plaintiffs is that the chain of title to subject property includes a deed dated May 23, 1945, from Lillie Bell Knox and James T. Amiss to Carl E. Norder, et al, which was not physically signed by Mrs. Knox. The deed was signed by her co-owner, James T. Amiss, in her presence, at her request and direction, in the presence of three competent witnesses and the notary.
The deed in question contains the following statement by the notary, W. Frank Gladney, before whom the act of sale was passed which fully explains what transpired on that occasion, to-wit:
"At the request of the parties hereto, this Act of Sale with Mortgage was passed at the home of one of the vendors, Mrs. Lillie Bell Knox, at 423 North Boulevard in the City of Baton Rouge, instead of at the office of the notary for the reason that the said Mrs. Knox is now confined to her home. The said Mrs. Lillie Bell Knox, being blind, after having requested that this Act of Sale with Mortgage be read to her and after it was read to her in a clear voice by me, notary, did declare her approval of and satisfaction with the said Act, and did authorize and instruct the above described James T. Amiss to affix her signature hereunder, all having been read, done and signed in the presence of me, notary, and the three undersigned competent witnesses all in fullfillment (sic) of the provisions of Art. 2234 of the Revised Civil Code of Louisiana, as amended."
The trial court in its written reasons for judgment, inter alia, stated:
* * *
"With regard to the instant set of facts, the court regards Mr. Amiss to have been not an agent or mandatary, but simply a helping hand who loaned his arm and eyes to Mrs. Knox so that she, through him, could sign the act of sale. Mr. Amiss was simply an instrumentality *207 for her signature much like the pen and paper are instrumentalities of the signature of a sighted person. Accordingly, the court concludes that because Mr. Amiss was not a mandatary, there was no violation of the rule prohibiting a verbal mandate to sell immovable property. Mrs. Knox's signature through Mr. Amiss is held to be valid and to have divested her of her ownership in the property in question herein. The provisions of Civil Code A Article 2234 (requiring, inter alia, that a blind person execute an authentic act in the presence of three witnesses and which defendant alleges is a statute prohibiting the Amiss signature for Knox) was not violated inasmuch as Mrs. Knox did sign albeit through an amanuensis, in the presence of three witnesses. * * *.
"For the reasons given above, the court rules that the aforesaid sale was valid, that the title in question is merchantable and that it is not suggestive of serious litigation. * * *."
Of the defendant's specification of errors of the trial court, we deem only two of these need be considered. These are:
1. That the trial court erred in holding that the Knox-Norder sale did not contain a verbal power of attorney but instead contained an amanuensis which was effective to transfer an immovable; and
2. The trial court erred in not holding that the title to the subject property was suggestive of serious future litigation.
These two assigned errors by the appellant, suggests two questions for consideration and answer. These are:
I. Does the act of signing the name of a vendor to an act of sale of immovable property by another person in response to the verbal request and direction of the vendor who is present at the signing require a written power of attorney for such act of sale to legally convey title to the vendee named in the act of sale? and,
II. Is the title to the immovable as thus vested in the vendee suggestive of serious future litigation?
We will consider these questions in the order stated:
The main thrust of appellant's argument is that our law requires that a mandate to transfer title to immovable property must be in writing. He cites a long line of jurisprudence to support this argument as well as LSA-C.C. Articles 2275, 2440 and 2992.
Appellees rely on the holding of the courts in the cases of Meyer v. King, 29 La.Ann. 567 (1877) and Elmore v. Butler, 169 So.2d 717 (La.App. 2nd Cir. 1964) as being most controlling.
If the request of Mrs. Knox to Mr. Amiss and her direction to him to sign her name to the act of sale was a mandate to transfer title to immovable property then the act of sale is fatally defective for the mandate was not reduced to writing. We acknowledge that a power of attorney to sell immovable property must be in writing. Turner v. Snype, 162 La. 117, 110 So. 109, 110 (1926) and the cases therein cited.
In Meyer v. King, supra, the court, in considering the validity of the confection of a counter-letter and the admissibility of certain testimony of whether the son of a party to the counter-letter had signed his farther's name to the act with his father's consent, held:
"* * * The counter-letter was not the mandate, but the act signed for, in presence and under the instructions of the parent. That authority was delegated for only one object, was not to be exercised out of the interested parties presence, lasted the space of time required to write a name, and expired when the last letter of the principal's name fell from the agent's pen. In such a case, the act itself is the act of the principal, not of the agent."
*208 In Elmore v. Butler, supra, a petitory action, the trial court had ruled that the deed from M. M. Elmore to Georgia Elmore and Novie Elmore was null and void because the signature thereon was found not to be that of M. M. Elmore, the alleged vendor, and there was no statement in the deed as to Elmore's inability, or reason for his failure, to sign. The proof was that on the occasion of the confection of the deed, after two other parties thereto had signed their names, the notary asked M. M. Elmore to sign his name to the deed. When he attempted to comply, his hand was too shaky to write. At that time the notary instructed Elmore to "put your finger on the pen and let me write for you" and that is what he did. After citing and discussing Coats v. Guaranty Bank & Trust Co., 174 La. 503, 141 So. 41 (1932); Waggoner v. Grant Parish Police Jury, 203 La. 1071, 14 So.2d 855 (1943); In re Deshotels' Estate, 153 La. 1096, 97 So. 203 (1923), and other authorities, the court held:
"The foregoing authorities convince us the signature of M. M. Elmore, affixed by G. F. Sheppard, where the former was present authorizing, aiding and consenting, became the signature of M. M. Elmore and thus effectively conveyed the property in dispute. * * *."
In Black's Law Dictionary, Revised Fourth Edition, 1968, the word Amanuensis is defined as "one who writes on behalf of another that which he dictates."
In 80 C.J.S. Signatures § 6, p. 1291, is found the following comment:
"Generally, a signature may be made for a person by the hand of another, acting in the presence of such person, and at his direction, or request, or with his acquiescence, unless a statute provides otherwise. A signature so made becomes the signature of the person for whom it is made, and it has the same validity as though written by him. * * * Where a signature is made in this manner the person writing the name is regarded as a mere instrumentality, by which the person whose signature is written exercises his own discretion and acts for himself, and not through an agent. * * *."
The other cases relied on by the appellee, viz: Coats v. Guaranty Bank & Trust Co., Waggoner v. Grant Parish Police Jury, and In re Deshotels' Estate, all cited supra, stand for the principle that the verbal direction and instruction from one person to another for the latter to sign the former's name makes a valid signature of the person whose name was written.
In the instant case, the vendor, Mrs. Lillie Bell Knox, was blind, the act of sale with mortgage was read to her, she voiced her approval and did ask Mr. James T. Amiss to sign the deed for her. All this was done in the presence of three competent witnesses and the notary.
We hold, under the authority above set forth, and the facts prevailing that the signing of the name of Mrs. Lillie Bell Knox by Mr. Amiss to be the lawful signature of Mrs. Knox and that the deed was translative of title to the property herein described to the named vendees. Further, we hold that Mr. Amiss was not an agent of Mrs. Knox in the context of the codal requirements that the mandate to convey immovable property must be in writing. He was nothing more than the amanuensis to Mrs. Knox, the instrument through which she wrote her name on the deed in much the same sense that one would use a typewriter, a pen or pencil to write a document or letter.
Now addressing the second question which this action dictates, namely: Is the title suggestive of serious future litigation, we do so mindful that the heirs of Mrs. Lillie Bell Knox, if any exist, are not before the court and that the holding herein is not res judicata as to them.
We note that the questioned deed is now over thirty years old and to this date *209 none of her heirs have intervened in this litigation or instituted any action to have the transaction declared null. This is not to say that no contest will ever be presented; however, it is indicative, we believe, that such a contest is remote. Insofar as this affects the merchantability of the title, we must say that the doubtfulness of success definitely affects the likelihood of an attack.
It is accurate to say that it is rare indeed that the circumstances surrounding this transaction occur. The unusualness of the occurrence does not render the transaction less valid. Our extensive research does not reveal a single case wherein the courts have declared such action of an amanuensis invalid.
In Roberts v. Medlock, 148 So. 474 (La. App.2nd Cir. 1933), the court stated:
A `merchantable title' is one which can be readily sold or mortgaged in the ordinary course of business, to a reasonable person familiar with the facts and appraised of the question of law involved. It need not be free from every technical defect, of all suspicion, or of the possibility of litigation. It must be a record title free of rational substantial doubt to the extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market. (citations omitted).
"The word `merchantable' implies something less than a perfect title and permits of defects which are not reasonably liable to result in assault. This presents a question of fact as well as one of law."
In the record we find testimony of members of the bar who, as expert witnesses, expressed opinions pro and con on the merchantability of the title. We are not impressed adversely by the honest opinion of such witnesses who might feel the title to the subject property is suggestive of serious future litigation.
In Pesson Plumbing and Heating Company, Inc. v. Hammonds, 160 So.2d 769 (La.App. 3rd Cir. 1964), the court said:
"A title does not become unmerchantable simply because a reputable attorney might question certain aspects of it as imperfect. As the Supreme Court recently stated in Kay v. Carter, 243 La. 1095, 150 So.2d 27, 29, `not all seeming defects render a title unmerchantable, especially those based on objections which are obviously groundless; it is when there are outstanding rights in third persons (not parties to the action) who might thereafter make claims of a substantial nature against the property, and hence subject the vendee to serious litigation, that the title is deemed not merchantable.' [Italics those of the Supreme Court.] * * *."
For the foregoing reasons we find that the title to the following described property, to-wit:
"One certain lot or parcel of ground together with all the improvements thereon and the rights, ways and privileges thereto appertaining, situated in that part of the City of Baton Rouge, State of Louisiana, known as Beauregard Town, and designated on the official map of the City of Baton Rouge as LOT NO. FOUR (4) of SQUARE NO. EIGHTEEN SOUTH (18S), of said Beauregard Town, the said lot measuring Sixty-four (64) feet front on the South side of Government Street by a depth at right angles and between parallel lines along the west side of St. Louis Street of One Hundred Six and two-thirds (106 2/3rd) feet, running through to the North side of France Street. Being the same property acquired from Martin Broderick on January 27, 1956,"
standing in the name of the plaintiffs is merchantable and not suggestive of serious *210 future litigation; and the judgment of the trial court ordering specific performance of the contract to purchase the above described property on the conditions therein set forth is affirmed. All court costs are assessed against defendant-appellant.
Affirmed.