24CA0863 Dawson v Yenko 04-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0863
Pueblo County District Court No. 22CV30305
Honorable Timothy O'Shea, Judge

Athena Dawson, Trustee of the Lawrence James Yenko Irrevocable Trust, a Colorado Trust,

Plaintiff-Appellee,

v.

William E Yenko,

Defendant-Appellant.

JUDGMENT REVERSED, ORDER VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE GROVE
Pawar and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

Torbet & Tuft LLC, Alyssa L. Miller, Colorado Springs, Colorado, for Plaintiff-Appellee

The Gasper Law Group PLLC, Jack Roth, Emily Moy, Colorado Springs, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, William E. Yenko (William), appeals the district court's grant of summary judgment in favor of plaintiff, Athena Dawson, trustee of the Lawrence James Yenko Irrevocable Trust (Dawson), and its order awarding attorney fees jointly and severally against William and his attorney.  Although we reject William's argument that the quitclaim deed at issue is facially invalid, we nonetheless conclude that the district court erred by entering summary judgment in Dawson's favor.  We therefore reverse the judgment and remand the case for further proceedings.  We also vacate the district court's order awarding attorney fees.

## I.    Background

¶ 2    This dispute involves a parcel of real property that was previously held in joint tenancy by Lawrence J. Yenko (Lawrence) and his brother, William.[1]  In question is whether, before his death, Lawrence validly transferred his one-half interest in the property to his irrevocable trust, thereby severing the joint tenancy.

---

[1] For clarity and because they share the same surname, we refer to Lawrence Yenko and William Yenko by their first names throughout this opinion.  We mean no disrespect by doing so.

1

¶ 3    The following facts appear to be undisputed.  Lawrence retained an attorney to create an estate plan that included the creation of an irrevocable trust and a quitclaim deed transferring his one-half interest in the property in question to that trust. Lawrence was quadriplegic; thus, anticipating that his condition would render him unable to physically sign the quitclaim deed, his attorney drafted the deed "with the knowledge that [Lawrence] would likely require someone to sign it in a representative capacity."

¶ 4    Eight months before his death, in the presence of his attorney and a notary, Lawrence instructed a third party, Maryann Camarillo, to sign the quitclaim deed for him.  The signature block appeared as follows:



IN WITNESS WHEREOF, the grantor, __Lawrence James Yenko__, has executed this deed on this 22 day of May, 2020.

_Lawrence J. Yenko_

**Lawrence James Yenko, Grantor, by** _Maryann Camarillo_

STATE OF COLORADO )
                  )ss.
COUNTY OF PUEBLO  )

The foregoing instrument was acknowledged before me this 22nd day of May, 20 20, by Mary Ann Camarillo for Lawrence James Yenko.

My commission expires: 10.01.2023

Witness my hand and official seal.

Notary Public

¶ 5   The deed was recorded with the Pueblo County Clerk and Recorder's office. Lawrence died eight months later.

¶ 6   In 2022, Dawson, Lawrence's daughter, filed a complaint against William alleging that he had refused to acknowledge the validity of the quitclaim deed and, by doing so, had prevented her from selling the trust's share of the property. The complaint sought a declaration that the quitclaim deed severed the joint tenancy and further requested that the court partition the property and award damages for unjust enrichment based on William's failure to contribute to the property's upkeep and tax obligations.

¶ 7    William countered with a number of affirmative defenses and his own quiet title claim to the property.  As relevant here, he asserted that the quitclaim deed did not comply with the statute of frauds, and was thus invalid, because Lawrence did not sign it himself and Camarillo, who William alleged was Lawrence's "agent," had not been authorized in writing to sign the deed for him.

¶ 8    Both parties sought summary judgment.  The district court concluded as a matter of law that the quitclaim deed transferring the property to the trust was valid because the undisputed evidence showed that Lawrence "was physically unable to sign" it and that Lawrence had authorized Camarillo to sign the deed on his behalf. *See* § 24-21-509, C.R.S. 2024 (allowing an individual who is physically unable to sign a record to, in the presence of a notarial officer, direct an individual other than the notarial officer to sign the individual's name on a deed).  In subsequent orders, the court awarded attorney fees against William and his attorneys under section 13-17-102(4), C.R.S. 2024, and then certified the summary judgment and attorney fee orders for appellate review under C.R.C.P. 54(b).

## II.     Facial Validity of the Deed

¶ 9     William contends that the quitclaim deed is facially invalid because it did not comply with the statute of frauds.  We disagree.

### A.     Standard of Review

¶ 10     We review questions of statutory interpretation de novo, with the goal of effectuating the legislature's intent.  *People ex rel. Rein v. Jacobs*, 2020 CO 50, ¶ 52.  "In doing so, we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings."  *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22.  Additionally, "[w]e must avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results."  *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 16.

¶ 11     In the context of land transfers, we must liberally construe "laws concerning or affecting title to real property . . . and all recorded instruments, decrees, and orders of courts of record" with the goal of "rendering such titles absolute and free from technical defects . . . and so that the record title of the party in possession is

sustained and not defeated by technical or strict constructions."
§ 38-34-101, C.R.S. 2024.

## B.    Applicable Law

¶ 12    As relevant here, Colorado's statute of frauds requires a real property deed to be in writing and "subscribed" — that is, signed — by the grantor.[2] § 38–10–106, C.R.S. 2024 (statute of frauds); *see* § 38–30–113, C.R.S. 2024 (providing the requirements and form for a valid deed for the conveyance of real property); *see also Coon v. Rigden*, 4 Colo. 275, 282 (1878) (As it appears in the statute of frauds, "[t]he term 'subscribed' is a substitute for the term 'signed.'").

¶ 13    If certain conditions are met, the signature of the grantor's authorized agent may also satisfy the statute of frauds. *See* § 38-10-106 (providing that a conveyance of an estate or interest in lands must be in writing subscribed by the grantor "or by his lawful

---

[2] These are not the only requirements, but the parties do not dispute that the deed at issue here identifies the grantee, adequately describes the property, contains language evidencing the grantor's intent to transfer title, and was delivered during the grantor's lifetime. *See* 2 David C. Cripe & Alicia M. Garcia, *Colorado Practice Series, Methods of Practice* § 64:4, Westlaw (Stephen A. Hess ed., 7th ed. database updated May 2024).

agent thereunto authorized by writing"). But to ensure "that all conveyances which are executed by any attorney-in-fact may be seen to be executed with the assent of the grantor," the agent's power of attorney "shall be recorded in the same office in which the conveyances themselves are required to be recorded."[3] § 38-30-123, C.R.S. 2024.

¶ 14    Deeds may be acknowledged and notarized, although acknowledgment and notarization are not prerequisites to a valid transfer. *See* § 38-35-101(3)(a), C.R.S. 2024 (providing that an acknowledged deed is prima facie evidence that the grantor is who he purports to be and "that he signed the instrument as his free and voluntary act"); *see also Am. Nat. Bank v. Silverthorn*, 287 P. 641 (Colo. 1930), *Friend v. Stancato*, 342 P.2d 643, 646 (Colo. 1959) (holding that an "unacknowledged deed may operate as a conveyance if the execution and delivery thereof is proven by competent evidence" and that an acknowledgment is intended to

---

[3] A power of attorney is a written document by which one party, as principal, appoints another as their agent (attorney-in-fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal. *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994).

"prove the execution of the conveyance, so as to insure its authenticity when presented for registration, and to enable it to be used in evidence without further proof of its execution by the grantor" (quoting *Colpitts v. Fastenau*, 192 P.2d 524, 528 (Colo. 1948))). Deeds that are notarized are subject to Colorado's Revised Uniform Law on Notarial Acts, which provides in pertinent part that "[i]f an individual is physically unable to sign a record, the individual may, in the presence of the notarial officer, direct an individual other than the notarial officer to sign the individual's name on the record." § 24-21-509(1).

## C. Analysis

¶ 15 According to William, the deed was invalid because Camarillo signed it as Lawrence's agent without procuring the necessary written authority to act as Lawrence's attorney-in-fact (and, in any event, without also recording a power of attorney establishing that she had been granted that authority as required by section 38-30-123). Dawson responds that Camarillo did not sign the deed as Lawrence's agent but instead signed it "solely in a representative

capacity" due to Lawrence's disability.[4]  Thus, she asserts, the

special requirements for authorized agents in the statute of frauds

do not apply.

¶ 16     We agree with Dawson.  Under the circumstances, Camarillo

did not act as Lawrence's "agent" — at least in the sense

contemplated by Colorado's statute of frauds — when she signed

the deed on his behalf.  Indeed, nothing in the record suggests that

---

[4] Although Dawson does not use the term, her argument that Camarillo signed the deed "in a representative capacity" for Lawrence seemingly implicates the "'amanuensis' rule," which "provides that where the signing of a grantor's name [to a deed] is done with the grantor's express authority, the person signing the grantor's name is not deemed an agent but is instead regarded as a mere instrument or amanuensis of the grantor, and that signature is deemed to be that of the grantor." *Est. of Stephens*, 49 P.3d 1093, 1096 (Cal. 2002).  A signature affixed by an amanuensis at the grantor's direction "becomes [the grantor's] own, and is sufficient to give the same validity to an instrument as though written by the person himself." *Gaspard v. Iberia Bank*, 2006-1459, p. 3 (La. App. 3 Cir. 3/7/07); 953 So. 2d 997, 999 (quoting *Elmore v. Butler*, 169 So. 2d 717, 720 (La. Ct. App. 1964)).  Because Dawson's substantive arguments focus on the applicability of section 24-21-509, C.R.S. 2024, and Lawrence's physical limitations, we do not consider whether Camarillo acted as an amanuensis when signing the deed on his behalf.  *See Compos v. People*, 2021 CO 19, ¶ 35 ("[W]e follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008))).

9

Lawrence delegated authority to Camarillo to *dispose of the property* herself or on her own initiative; rather, he merely directed Camarillo to *sign the document* on his behalf due to his physical limitations. In other words, Camarillo merely acted as Lawrence's hand when signing the deed — a role that Colorado statute explicitly permitted her to play so long as Lawrence was "physically unable to sign." § 24-21-509.

¶ 17    Thus, assuming that Lawrence's condition satisfied the requirements of section 24-21-509, that statute authorized Lawrence to direct Camarillo to sign the deed on his behalf. Although the parties disagree as to whether the technical requirements of various statutes were met (a question that we do not reach given our conclusion that summary judgment was inappropriate), there does not appear to be any dispute that Camarillo affixed her signature at Lawrence's direction and in the presence of a notarial officer, who confirmed that she signed the document "for Lawrence James Yenko."  By following this process, Lawrence, through Camarillo, subscribed his signature to the deed. And because Camarillo acted as Lawrence's hand, rather than as

his agent, the special requirements for agents outlined in the statute of frauds and section 38-10-123 do not apply.

### III. Summary Judgment

¶ 18 The foregoing discussion comes with a major caveat: Lawrence's argument that Camarillo could sign the deed on his behalf depends on whether he was in fact "physically unable to sign" the document as contemplated by section 24-21-509. William asserts that the evidence before the district court did not establish Lawrence's physical inability to sign the deed, and that because that material fact was still disputed, the court erred by entering summary judgment. We agree.[5]

### A. Standard of Review

¶ 19 We review a district court's summary judgment order de novo. *Edwards v. New Century Hospice, Inc.*, 2023 CO 49, ¶ 14. A court must grant summary judgment when the pleadings and supporting

---

[5] William also asserts that the court erroneously granted summary judgment because the deed did not substantially adhere to certain statutory requirements that he maintains were necessary to authenticate Camarillo's signature and to provide prima facie evidence of valid execution. We do not reach this question because we conclude that summary judgment was unwarranted for another reason — the existence of material questions of fact surrounding Lawrence's physical ability to sign the deed.

documentation show there are no genuine issues of material fact and that the moving party is entitled to summary judgment as a matter of law. C.R.C.P. 56(c); *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1051 (Colo. 2011). However, "[a] party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988).

### B. Additional Facts

¶ 20 Attached to Dawson's summary judgment motion was an affidavit from Lawrence's attorney, Anthony Perko, who attested to the following:

- Perko "drafted the Deed with the knowledge that [Lawrence] would likely require someone to sign it on his behalf in a representative capacity because of his physical inability."

- Lawrence was "of sound mind, competent to understand and make legal decisions, and . . . was able to express his desires and intent," and there were no circumstances that appeared to "affect[] [Lawrence's] ability to make legal decisions" on the date of the deed's execution.

- Lawrence "executed a medical power of attorney and a living will . . . with extreme difficulty. Thus, the remainder of the documents were signed by Maryann Camarillo on his behalf because of his physical limitations."

- Perko "personally witnessed Lawrence Yenko verbally direct Maryann Camarillo to sign his name on the Deed in a representative capacity because he would have extreme physical difficulty in doing so."

¶ 21    William filed a brief in opposition to Lawrence's motion for summary judgment, but he did not present evidence contradicting any of these factual assertions.[6] Instead, he argued that the

---

[6] We acknowledge that, in his C.R.C.P. 56(h) motion seeking a determination of a question of law, William wrote that, "[f]or the purposes of this motion, [William] does not dispute [Lawrence's] allegation that [Lawrence] was quadriplegic and was physically unable to use his hands." To the extent that the district court considered this (qualified) statement as an admission of Lawrence's physical incapacity for the purposes of resolving the question whether section 24-21-509 applied, the court erred. "When both parties move for summary judgment, the trial court must 'consider each motion separately.'" *Jones v. Samora*, 2016 COA 191, ¶ 44 (citation omitted). "One party's assertion of undisputed facts cannot 'be applied in connection with' the other party's cross-motion for summary judgment." *Id.* (citation omitted).

evidence in the record, including Perko's affidavit, did not establish that Lawrence was "physically unable to sign" the deed, as would be required to permit Camarillo to sign it on his behalf under section 24-21-509.

¶ 22    The district court granted summary judgment after concluding that Lawrence had "put forth sufficient proof that [he] was physically unable to sign" the deed.  The court noted that William did not rebut the assertions in Perko's affidavit and found that, for section 24-21-509 to apply, Lawrence "was not required to wait to sign the deed until he thought he may have limited intermittent use of his hands, only to potentially not be able to physically sign upon trying."

¶ 23    William now argues, as he also did in his response to the trustee's motion for summary judgment, that the trustee did not carry her burden of proving that Lawrence was physically unable to sign the deed; rather, she just proved that he would have extreme difficulty using his hands.

## C.    Applicable Law

¶ 24    Section 24-21-509 on Notarial Acts states:

14

> If an individual is physically unable to sign a record, the individual may, in the presence of the notarial officer, direct an individual other than the notarial officer to sign the individual's name on the record. The notarial officer shall insert "Signature affixed by (name of other individual) at the direction of (name of individual)" or words of similar import under or near the signature.

¶ 25    "Sign" means, "with present intent to authenticate or adopt a record,"(1) "[t]o execute or adopt a tangible symbol"; or (2) "[t]o attach to or logically associate with the record an electronic symbol, sound, or process." § 24-21-502(12), C.R.S. 2024.

### D.    Analysis

¶ 26    We conclude that summary judgment was not warranted because Dawson did not present undisputed evidence of a material fact: Lawrence's physical inability to sign the deed. Perko's affidavit leaves open the possibility that Lawrence could have executed the deed himself, albeit with "extreme difficulty." That is, it left unresolved questions not only about the extent to which Lawrence could have put pen to paper but also about whether, for example, he could have logically associated with the deed an electronic symbol or sound that could have substituted for a handwritten signature. *See* § 24-21-502(12)(b).

¶ 27    We recognize that Perko's affidavit could be interpreted as establishing that, at the moment the deed was presented to him, Lawrence was physically unable to sign it.  But at the summary judgment stage, the district court was required to give all favorable inferences to William as the nonmoving party.  *See Jacobs*, ¶ 41 ("In considering whether summary judgment is appropriate, a court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party.").  Perko described Lawrence as signing his medical power of attorney and living will with "extreme difficulty" before instructing Camarillo to sign the deed on his behalf.  While one could infer that Lawrence was exhausted by his earlier efforts and was physically unable to continue by the time he was presented with the deed, that conclusion does not inexorably follow from Perko's description of the events.  To the contrary, giving William every favorable inference that can be reasonably drawn from the record, the reasons for Lawrence's failure to sign the deed — whether by hand or via a method contemplated by section 24-21-502(12)(b) — presents a factual question that could not be resolved on summary judgment.

16

¶ 28    Accordingly, because the undisputed facts did not establish that Lawrence was physically unable to sign the deed, we reverse the grant of summary judgment and remand the matter to the district court for further proceedings.

## IV.    Attorney Fees

¶ 29    The district court granted attorney fees against William and his attorneys, jointly and severally, for his quiet title defense and counterclaim under C.R.C.P. 11(a) and section 13-17-102(4).  Given our reversal of the summary judgment ruling, we must vacate the fee award as well.

¶ 30    Dawson also requests attorney fees on costs for the appeal, arguing William's claims are frivolous.  A claim is "frivolous", as would warrant imposition of attorney fees or sanctions, if the proponent can present no rational argument based on the evidence or law in support of that claim.  *Francis v. Camel Point Ranch, Inc.*, 2019 COA 108M, ¶ 18.  Given the outcome of this appeal, we deny Dawson's request for fees.

## V.    Disposition

¶ 31    We reverse the court's grant of summary judgment, vacate the award of attorney fees, and remand the case for further proceedings consistent with this opinion.

JUDGE PAWAR and JUDGE BERNARD concur.